Anthony **FUENTES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 72700.

Court of Criminal Appeals of Texas.

April 28, 1999.

Gary Taylor, Austin, for appellant.

Kevin P. Yeary, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which MANSFIELD, PRICE, HOLLAND, WOMACK, JOHNSON, and KEASLER, J.J., joined.

Appellant was convicted in November 1996, of a capital murder committed on February 18, 1994. TEX. PENAL CODE § 19.03. The jury's verdicts required the trial court to sentence appellant to death. TEX. CODE CRIM. PROC. art. 37.071 § 2. Appeal from the sentence of death is automatic to this Court. *Id;* TEX. CONST. Art. I, § 5. Appellant raises seventeen points of error.

In his first point of error, appellant challenges the legal sufficiency of the evidence to establish beyond a reasonable doubt that he is the person who shot and killed the victim. Appellant also argues the evidence is insufficient to corroborate the accomplice witness testimony.

Reviewed in the light most favorable to the verdict, *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Nelson v. State,* 848 S.W.2d 126, 131 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 830, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993), the evidence establishes that on Friday, February 18, 1994, appellant, Kelvin Templeton, Terrell Lincoln, and Steve Vela conspired to rob the Handi Food Mart and any employees or customers who happened to be in the store. The Handi Mart was busy with employees of the Swartz Electric Company who had just been paid, cashed their paychecks at the store and were enjoying a few beers and the company of coworkers outside the premises of the store. Among those gathered was Robert Tate, a regular customer and acquaintance of the proprietors of the Handi Mart and sometime employee of Swartz Electric.

Appellant and his cohorts arrived at the store, noted that it was busy and proceeded with their plan. Templeton went directly to the coolers, grabbed two cases of beer and walked out. Appellant and Vela walked into the store behind Templeton and pulled out their guns. Vela went to the cashier and demanded money. Appellant approached the proprietor and a customer who were standing near the counter. The customer, Raymundo Soria, was a high school classmate of appellant's. He followed appellant's orders, hiding his identity in fear that appellant would recognize him. James Draffin was walking into the store when he noticed that it was being robbed. He ran to inform his co-workers of the robbery. Ignoring his friends' warnings not to get involved, Tate gave chase when Templeton left the store with the beer. Tate caught up to Templeton and grabbed him. Templeton dropped the beer. Just then, appellant came running out of the store. Julio Flores testified that appellant came out of the store, ran up to Tate and Templeton, and shot Tate twice in the chest. Testimony at trial indicated that appellant used a semi-automatic gun. Tate fell into a nearby ditch and died.

The bullets recovered from Tate's body were consistent with those used in a 9 millimeter weapon, which are most commonly semiautomatic.

Flores further testified that, despite standing five hundred meters from appellant, he got a good look at his face and positively identified appellant as Tate's murderer. Flores' description of appellant was consistent with the description given by the proprietor as the man who robbed him in the store. Flores and Soria positively identified appellant in photo lineups.

Templeton was the only co-conspirator to testify. He testified that he was not watching when he heard the shots fired; he thought Tate had shot at him, so he just began running. Templeton testified that although he did not see it, he was under the impression that appellant had shot Tate because when he looked back, appellant had a gun in his hand and was the one closest to him, and he had not seen Vela near the victim.

In arguing the evidence was legally insufficient to prove beyond a reasonable doubt that appellant was the person who shot the victim, appellant relies in large part on the testimony of an expert witness regarding the inaccuracy of eye-witness testimony and Flores' identification of appellant in particular. For example, appellant points out that the entire robbery took place very quickly, visibility was poor at that time of the evening, the witnesses were some distance from the shooting, there were a number of distractions and obstructions, and some of the matters Flores testified to were not supported in the record. The victim was killed with a gun capable of firing a nine millimeter bullet, but testimony was inconsistent concerning the types of guns carried by appellant and Vela in the robbery.

■ Appellant's arguments amount to attacks on the credibility of the State's evidence. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). When faced with conflicting evidence, this Court "presume[s] the trier of fact resolved any such conflict in favor of the prosecution." *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App.1993). A reasonable juror could, on the evidence provided, find beyond a reasonable doubt that appellant was the person who shot and killed Tate.

■ Appellant also complains the non-accomplice evidence (that is, discounting Templeton's testimony) does not "tend to connect" him with the offense. He contends Flores' testimony was unreliable for many of the reasons cited above and argues the non-accomplice evidence was more incriminating of Vela than of appellant. Appellant also argues that while there is evidence connecting him to the robbery, there is no non-accomplice evidence connecting him to the killing.

Flores was not an accomplice. He testified that he saw appellant run up to the victim and shoot him. This testimony is sufficient to "tend to connect" appellant with the commission of the offense. Appellant's first point of error is overruled.

■ In his second point of error, appellant challenges the factual sufficiency of the evidence to establish that he committed capital murder. *Clewis v. State,* 922 S.W.2d 126, 131–32 (Tex.Crim.App.1996); *Bigby v. State,* 892 S.W.2d 864, 875 (Tex. Crim.App.1994), *cert. denied,* 515 U.S. 1162, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995); *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). A factual sufficiency review takes into consideration *all* of the evidence and weighs the evidence which tends to prove the existence of the fact in dispute against the contradictory evidence. *Clewis,* 922 S.W.2d at 129, 134; *see, e.g., Ellis County State Bank v. Keever,* 915 S.W.2d 478, 479 (Tex.1995). But, to avoid intruding on the

jury's role as arbiter of the weight and credibility of the evidence, a factual sufficiency review remains deferential to the jury's verdict. *Clewis,* 922 S.W.2d at 133. That a different verdict would be more reasonable is, therefore, insufficient to justify reversal; the jury's verdict will be upheld, unless it is so "against the great weight of the evidence " that it is "clearly wrong and unjust," i.e., manifestly unjust, shocking to the conscience or clearly biased. *Id.* at 135.

Appellant cites sufficient conflicting evidence to support an argument that another reasonable jury, weighing the evidence and assessing the credibility of the witnesses, could have reached a different verdict from the one reached by appellant's jury. But having reviewed the record, we cannot agree with appellant that the verdict reached was so "against the great weight of the evidence that it is clearly wrong and unjust, i.e., manifestly unjust, shocking to the conscience or clearly biased." Appellant's second point of error is overruled.

In his third point of error, appellant claims he was denied his Sixth Amendment right to counsel when trial counsel failed to request a jury instruction on the lesser included offense of felony murder. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ In determining the effectiveness of counsel under the Sixth Amendment, we utilize the two prong test set forth in *Strickland,* supra. The first question is whether counsel's performance fell below professional norms. *Id.* at 685, 104 S.Ct. 2052. If counsel's performance was deficient, we then ask whether there is a reasonable probability the result would have been different but for counsel's deficient performance. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.*

■ In order to establish his claim that trial counsel's performance was deficient for failing to request an instruction, appellant must show that he was entitled to an instruction on the lesser included offense of felony murder. *Kinnamon v. State,* 791 S.W.2d 84, 97 (Tex.Crim.App. 1990)(since the evidence did not authorize submission of a murder instruction as a lesser included offense appellant's trial counsel was not ineffective for failing to request it), *overruled on other grounds, Cook v. State,* 884 S.W.2d 485 (1994). To establish he was entitled to an instruction on felony murder, appellant must establish that felony murder is a lesser included offense of capital murder and that there was evidence that if guilty of an offense, appellant was guilty only of felony murder. *See Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993).

■ The distinguishing element between felony murder and capital murder is the intent to kill. *Adanandus v. State,* 866 S.W.2d 210, 231 (Tex.Crim.App.1993)(evidence that in course of robbery, bystander was accidentally shot in struggle for gun would have raised lesser included offense of felony murder), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994). Felony murder is an unintentional murder committed in the course of committing a felony. TEX. PENAL CODE § 19.02(b)(3). Capital murder includes an intentional murder committed in the course of robbery. *Id.* at § 19.03(a)(2). The elements of felony murder are included within the proof necessary for capital murder committed in the course of robbery. *Rousseau,* 855 S.W.2d at 673; *Robertson v. State,* 871 S.W.2d 701, 706 (Tex. Crim.App.1993), *cert. denied* 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994). Thus, felony murder is a lesser included offense of capital murder.

■ The further question is whether there was some evidence that would permit a jury rationally to find that appellant had the intent to commit the robbery, but not to cause the death of the victim. Appellant points to evidence he says estab-

lishes that robbery was the only objective of appellant and his cohorts that night and that murder was not anticipated, especially not the murder of a bystander who interjected himself into the offense. But what appellant anticipated before the offense is inconsequential; the issue is whether there is any evidence that appellant did not intend to kill Tate at the time he shot him. As we stated in *Rousseau*, 855 S.W.2d at 674, "[t]he possibility that initially or at some point during the commission of the robbery the offender did not have an intent to cause death does not amount to evidence that the offender did not intend to cause the victim's death when the murder was committed." The evidence shows appellant ran up to Tate, shot him not once but twice in the chest, and then fled the scene as Tate fell into a ditch and died. We conclude there is no evidence upon which a jury could rationally have found that appellant did not intent to kill when he shot the deceased. Accordingly, appellant was not entitled to a charge on the lesser included offense of felony murder. Having failed to establish that he was entitled to this instruction, appellant does not satisfy the first prong of the *Strickland* test. Point of error three is overruled.

██ In point of error four appellant claims the trial court erred in offering his own definition of beyond reasonable doubt instead of the definition required under *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim.App.1991). While a proper *Geesa* instruction was included in the jury charge, appellant argues that the correct instruction was overborne by the trial judge's personal definition given during the voir dire.

██ After instructing the venire with the *Geesa* instruction, the trial court made the following additional comments:

It is entirely possible right now that some of you are sitting there saying to yourselves 'what in the world did he just say.' I think—and you come up with your own notion, I think that what that definition means is simply this: If at the

conclusion of all of the evidence in the case and based upon your evaluation of all of the evidence in the case, *if you believe in your heart and in your conscience based upon your evaluation of the evidence in the case that the defendant is guilty*, the State has proved its case beyond a reasonable doubt.

(emphasis added). At this point appellant objected that the court's explanation was "less than the standard governed by law." The court overruled appellant's objection and continued with its explanation, repeating the above comments virtually verbatim:

Ladies and gentlemen, I'm using this as an example; but if at the conclusion of all the evidence in the case, based upon your evaluation of that evidence if you do not *believe in your heart and in your conscience, based upon your evaluation of that evidence, that the defendant is, in fact, guilty* of the offense, the State has failed in its proof to show to you beyond a reasonable doubt that the defendant is guilty. Now, that's just my thought. And I think that's a perfectly consistent thought insofar as the definition that the law requires I give you.

The point of it is you are entitled to make a common-sense decision based upon the evidence that's presented but the evidence presented must show to you beyond a reasonable doubt the defendant's guilt before you find him guilty. The significant point is the State's burden to show beyond a reasonable doubt.

(emphasis added). No objection was made to these later comments. In order to preserve error, the objecting party must continue to object each time the objectionable evidence is offered. Appellant thus waived any complaint as to the trial court's remarks. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991). Appellant's fourth point of error is overruled.

██ In point of error five appellant claims the trial court erred in overruling

his objection to the State's arguments which allegedly struck at appellant over the shoulder of counsel. *Fuentes v. State,* 664 S.W.2d 333, 335 (Tex.Crim.App.1984). Appellant complains of the following arguments: [1]

> Make them explain to you why Mr. Flores came down here after he left the scene, didn't want to get involved and folks, this ought to be a lesson to you. Do you see what happens to people when they get involved? And you wonder why people don't more often. Because you come down here and you try to tell the truth and you try to tell what you remember seeing and you're under oath and all you get is badgering and all you get is skepticism. Why isn't his testimony just as credible as anyone else who was out there" [sic] Attack the messenger, folks. Kill the messenger. Mr. Flores is one of the strongest pieces of evidence against their client and they're bound to try to destroy him in front of you to save his neck.

This Court has long recognized that prosecutors' arguments which attack the personal morals or trustworthiness of defense counsel are manifestly improper because they undermine the adversarial system by unfairly prejudicing the jury against the defendant's attorney. *Id.* But the arguments complained of here do not fall under the authority of this precedent. In the context of the record, the State's comments do not attack the veracity or morals of defense counsel but respond to the defense strategy of discrediting the State's key witness. *See Dinkins v. State,* 894 S.W.2d 330, 357 (Tex.Crim.App.), *cert. denied,* 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). Appellant's fifth point of error is overruled.

■ In point of error six appellant complains the State misrepresented the law in its closing arguments during the guilt/innocence phase of trial. More specifically, appellant argues the State contra-

dicted the court's charge by telling the jury they all had to agree that appellant was not guilty of capital murder before they could consider the lesser included offenses. Appellant argues this assertion conflicted with the following portion of the charge:

> If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either capital murder or aggravated robbery, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of aggravated robbery.

The State denies its arguments contradicted the court's charge, pointing to a part of the charge which states

> [I]f you have a reasonable doubt [about appellant's guilt as to the capital murder charges] you will acquit the defendant of capital murder and *next* consider whether the defendant is guilty of aggravated robbery.

The State's assertions that the jury must reach a verdict on the capital murder charge *before* considering the lesser offense of aggravated robbery was consistent with this clause. The clause pointed to by the State addresses what to do in the event the jurors believed appellant guilty of one, but not sure which, of the two offenses. The other clause does not address this situation. The State's argument was not inconsistent with the law as stated in the charge. Appellant's sixth point of error is overruled.

■ In his seventh point of error, appellant claims the trial court erred in failing to grant a mistrial after the State commented on appellant's right to remain silent during its argument at the punishment phase of trial. U.S. Const. amend. V; Tex. Const. art. 1, § 10; tex. Code crim. Proc. art. 38.08; *Dickinson v. State,* 685 S.W.2d 320, 323 (Tex.Crim.App.1984). Ap-

---

1. Appellant also complains of other portions of the State's arguments, but he failed to object to those portions at trial and thus error was not preserved.

pellant complains of the following comment:

> Then we have Robert Tate. You know, it's about time you folks got to hear a little bit about Robert Tate. Seems like from the minute you walked into this courthouse, the system designed as it is, from the very beginning we've made sure that this defendant received every right that a person accused of is entitled to. And, I'm not standing here saying that begrudgingly. I have a lot of respect for this system, but you can see how sometimes there's some insanity involved here. He gets a right to this trial. We give him that. We abide by every right he has. We prove our case by the burden of proof. *We respect his right to remain silent and we've done that and we're continuing—*

(emphasis added). Appellant's objection to this last comment was sustained and the jury was instructed to disregard the comment. Appellant's motion for mistrial was denied.

██ To violate appellant's constitutional and statutory rights, the objectionable comment, viewed from the jury's perspective, "must be manifestly intended to be or of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify." *Banks v. State,* 643 S.W.2d 129, 134–35 (Tex.Crim.App.1982), *cert. denied,* 464 U.S. 904, 104 S.Ct. 259, 78 L.Ed.2d 244 (1983). An indirect or implied allusion to the accused's failure to testify does not violate a defendant's right to remain silent. *Id.* Calling attention to the absence of evidence which only the defendant could produce will result in reversal only if the remark can only be construed to refer to appellant's failure testify and not the defense's failure to produce evidence. *Id.*

The complained of comment was a recognition that appellant possessed a *right* not to testify and the State respected that

right; this is distinguishable from cases in which the State comments negatively on the defendant's *failure* to testify. Moreover, to the extent such comment could be construed as commenting on the defendant's failure to testify, it was not so inflammatory that any prejudicial effect could not have been removed by the trial court's instructions to disregard the remark. *Caldwell v. State,* 818 S.W.2d 790, 801 (Tex.Crim.App.1991), *cert. denied,* 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992), *overruled on other grounds, Castillo v. State,* 913 S.W.2d 529 (1995). Appellant's seventh point of error is overruled.

██ In points of error eight and nine, appellant argues that his Fourteenth Amendment right to equal protection was violated by the trial court's instructions permitting the jury to consider gender as a mitigating circumstance.[2]

Appellant's complaints are directed to statements made by the trial court during voir dire. The court explained that mitigation was a personal, well reasoned, moral response to the evidence and offered as an example, that some people may or may not find youth to be mitigating, and that "sometimes people think gender might be mitigating, others might not." He later told the veniremembers that he could not tell them what a mitigating circumstance is, but stated again "Lots of times some folks think that in some cases youthfulness might be a mitigating circumstance; others might not. Some folks might think in some cases that gender might be a mitigating circumstance." These comments did not authorize the jury to consider gender a mitigating circumstance. The court was careful to emphasize that these were *examples* of personal responses to the evidence and not defined categories. Moreover, appellant cites no authority that the jury should not be allowed to consider gender a mitigating circumstance. Even

---

2. Appellant also argues that Article 37.071 is unconstitutional as applied in his case, but this argument was not preserved for review.

if, by its comments, the court authorized the jury to consider gender as a mitigating factor, it did not identify which gender would be considered mitigating and did not suggest that the other gender should be considered an aggravating factor. Appellant's eighth and ninth points of error are overruled.

■■■■■ In points of error ten and eleven, appellant argues the trial court erred by telling veniremembers that the mitigation special issue called for a weighing of appellant's "good and bad" qualities. Appellant argues this instruction permitted unfettered discretion proscribed in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Appellant concedes he made no objection, but argues that we should consider this fundamental error "akin to the Court's opinion in" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1985). The complained of comments were made orally and did not appear in the jury charge.[3] We decline to extend *Almanza* beyond the context of the jury charge. Thus, by failing to object, appellant has not preserved error for review. Tex. R. App. Proc. 33.1(a). Appellant's tenth and eleventh points of error are overruled.[4]

■■■ In point of error twelve appellant complains the trial court erred by instructing the jury with an anti-sympathy charge during the punishment phase of trial. Appellant argues that his mitigation strategy was to establish that he was not the one-dimensional villain depicted by the State.

To this end he introduced evidence that he was a quiet, respectful young man who was reared by two good people, his grandmother and grandfather. A number of relatives and friends testified about his redeeming qualities. Appellant argues that the persuasive force of this testimony was obliterated by the trial court's instructions, three separate times in the jury charge, that the jury "was not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feeling in considering the evidence before [it] and in answering the special issues." Appellant argues his case is not governed by *California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987)(upholding anti-sympathy charges), because he challenges the instruction as a comment on the weight of the evidence.

In *Green v. State*, 912 S.W.2d 189, 195 (Tex.Crim.App.1995), *cert. denied*, 516 U.S. 1021, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996), we addressed a claim that the Eighth and Fourteenth Amendments were violated because the trial court had charged the jury that it could not be influenced by "mere sympathy" when answering the special issues. Green argued that the anti-sympathy charge unconstitutionally nullified the special issue on mitigation. Citing *Brown*, supra, we held that anti-sympathy charges do not unconstitutionally contradict mitigation instructions. The Supreme Court's observations in *Brown* are applicable to appellant's case:

> By concentrating on the noun "sympathy," [Brown] ignores the crucial fact

---

3. The comments complained of were made only to a panel of six veniremembers, none of whom served on appellant's jury.

4. Appellant's eighth, ninth, tenth, and eleventh points of error are essentially attacks on the constitutionality of the Texas death penalty scheme on grounds that the mitigation special issue permits unfettered discretion in violation of *Furman*. We have resolved this issue against appellant, having held that our statute properly narrows the eligibility decision during the guilt phase while permitting the jury at punishment the ability to determine a defendant's culpability. *Bell v. State,*

938 S.W.2d 35, 54 (Tex.Crim.App.1996). Contrary to appellant's contention, the federal constitution's requirement of definiteness in setting the parameters of death eligibility is not applicable to provisions allowing the jury to consider and give effect to mitigating evidence. *Id. Furman* concerns the untrammeled discretion to impose the death penalty, not the decision that circumstances exist which mitigate against the imposition of the death penalty. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994).

that the jury was instructed to avoid basing its decision on mere sympathy. Even a juror who insisted on focusing on this one phrase in the instruction would likely interpret the phrase as an admonition to ignore emotional responses that are not rooted in the aggravating and mitigating evidence introduced during the penalty phase. While strained in the abstract, respondent's interpretation is simply untenable when viewed in light of the surrounding circumstances. This instruction was given at the end of the penalty phase, only after respondent had produced 13 witnesses in his favor. Yet respondent's interpretation would have these two words transform three days of favorable testimony into a virtual charade. We think a reasonable juror would reject that interpretation, and instead understand the instruction not to rely on "mere sympathy" as a directive to ignore only the sort of sympathy that would be totally divorced from the evidence adduced during the penalty phase.

We also think it highly unlikely that any reasonable juror would almost perversely single out the word "sympathy" from the other nouns which accompany it in the instruction: conjecture, passion, prejudice, public opinion, and public feeling. Reading the instruction as a whole, as we must, it is no more than a catalog of the kind of factors that could improperly influence a juror's decision to vote for or against the death penalty. The doctrine of *noscitur a sociis* is based on common sense, and a rational juror could hardly hear this instruction without concluding that it was meant to confine the jury's deliberations to considerations arising from the evidence presented, both aggravating and mitigating.

*Brown,* 479 U.S. at 543, 107 S.Ct. 837. The same reasoning which defeated Brown's constitutional challenge to the anti-sympathy charge defeats appellant's assertions that the charge was an improper comment on the weight of the evidence. In recognizing that an anti-sympathy charge does not have the effect of nullifying the special issue, we necessarily recognize such charge was not a comment on the weight of the evidence. In other words, not being a comment on the weight of the evidence, such charge does not have any nullifying effect on the special issues. Appellant's twelfth point of error is overruled.

■ In his thirteenth point of error, appellant argues the trial court erred in excusing juror Merrill Banks after he had been seated on the jury. All parties knew when Banks was seated that his son was on deferred adjudication for three aggravated robberies. After he was seated but before the jury was impaneled and sworn, Banks approached the court and explained that his son had been arrested for violating the conditions of his deferred adjudication and was facing the possibility of a thirty-five year sentence. Banks testified that he was disturbed and distressed, that he could not make rational decisions, could not be objective toward the State and that he was being treated for stress and depression due to his son's troubles. Appellant objected to Banks' excusal on grounds that everyone knew his son was on deferred adjudication when he was seated on the jury. The court considered appellant's objection and excused Banks, replacing him with an alternate juror. The jury was then impaneled and sworn.

Appellant acknowledges that in *Butler v. State,* 830 S.W.2d 125, 129 (Tex.Crim.App. 1992) and *Kemp v. State,* 846 S.W.2d 289, 293 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993), this Court held that Code of Criminal Procedure article 35.03 gives a trial court broad discretion to excuse prospective jurors for good reason. Appellant argues that his case is distinguishable from *Kemp* because Banks was excused "minutes before testimony began." This argument is unpersuasive. In *Kemp* we held

Given the fact that the commencement of appellant's trial was at hand and juror Maenius was apparently plagued with personal problems so exigent as to potentially inhibit his ability to concentrate on the trial, we hold that the trial judge's decision to excuse this juror under Article 35.03 was within his discretion.

846 S.W.2d at 295. We further clarified that "a trial court has the authority to excuse a juror for a proper basis, although sworn, *at any time up to the time the jury has been sworn as a whole and impaneled." Id.* at n. 4 (emphasis added). The trial court did not abuse its discretion in excusing Banks. Appellant's thirteenth point of error is overruled.

■ In point of error fourteen appellant claims the trial court erred in overruling his *Batson* challenge during jury selection. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In making a *Batson* challenge the defendant must allege and establish a prima facie case of purposeful racial discrimination, which the State is then required to refute with race-neutral explanations for the use of its peremptory challenges. *See, e.g., Williams v. State,* 804 S.W.2d 95, 97 (Tex.Crim.App.), *cert. denied,* 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). On appeal we will not reverse a trial court's decision unless it is clearly erroneous. *Id.* at 101.

After the State peremptorily struck Alma Loretta Green, an African–American juror, appellant raised a *Batson* challenge alleging that the State had systematically eliminated all African–American, in fact, all minorities from the jury. The State responded that Green had initially testified she would require premeditation before she could consider the death penalty, she

had testified she would prefer not to give the death penalty to anyone younger than twenty-one and that she was disinclined toward the death penalty, generally. The State explained that it believed it could get a more pro-state juror. The State further said the other African–American veniremembers which it had peremptorily struck had similarly been struck because they had not been as strong on the death penalty as the State would have liked. As an example by which to measure them, the State identified a white venireperson, Stephen Grafton, it had struck and explained that the minority jurors striken were not even as state-oriented as Grafton, yet Grafton had been struck. The State did not otherwise provide a separate race-neutral reason for each of the African–American veniremembers struck. Appellant argues the State failed to meet its burden by offering only a general explanation for three of its four strikes against African–American veniremembers.

■ While the State's explanation was general, it nonetheless provided a race-neutral reason for the strikes. The prosecutor stated he believed the struck jurors were all inclined away from many of the State's positions, irrespective of their race. A trial court's *Batson* rulings are not to be disturbed on appeal if they are supported by the record and are not "clearly erroneous." *Tennard v. State,* 802 S.W.2d 678, 680 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991). The role of the reviewing court is to determine whether the trial court's ruling was supported by the record.[5] *Id.* The record supports the State's explanation that the struck jurors were not particularly state-oriented. Under these facts we hold the trial court's rejection of

---

**5.** Venireperson Isles voiced skepticism about the fairness of the justice system, and expressed strong reservations about his ability to send someone to death row, or even to give anyone a life sentence. Venireperson Riley testified that he thought death should be reserved "for people who kill a kid or something like that." He initially testified that he

would hold the State to a higher burden of proof than in other criminal cases if the State sought the death penalty. Veniremember Gardner testified initially that she would give death only for multiple murders and that she would hold the State to a higher burden of proof if it sought the death penalty.

appellant's *Batson* objection was not clearly erroneous. Appellant's fourteenth point of error is overruled.

■ In his fifteenth point of error, appellant argues the trial court erred in refusing to permit him to rebut Sandy Gaw's testimony that the victim had never caused trouble at the Handi–Mart. Appellant asserts that in its direct examination of Gaw, a proprietor of the Handi Mart, the State evoked general testimony about the victim's good character and argues that since the State had "opened the door," he was entitled to rebut Gaw's testimony by asking her whether she had heard about Tate's unlawful use of a motor vehicle in 1992, criminal mischief in 1990, attempted burglary in 1987, and evading arrest in 1984. The State denies it put the victim's character at issue. The State argues, in the alternative, that appellant's evidence, specific instances of misconduct, was irrelevant and beyond the scope of direct-examination, and that the specific extraneous acts of misconduct were more prejudicial than probative.

Rule of Criminal Evidence 107, the "Rule of Optional Completeness," has been recognized as addressing or at least encompassing the "opening the door" situation:

"It is well established that the evidence which is used to fully explain a matter opened up by the other party need not ordinarily be admissible." Thus, the necessity of completeness will justify the introduction, through the "open door," of extraneous offense evidence, hearsay, or other matter that would otherwise be incompetent. There are, however, two limitations to the scope of the completeness opening. One, only parts or items germane to the part or item offered ("on the same subject") become admissible. Two, the matter offered on the justification of completeness may be excluded under Rule 403 if its prejudicial effect substantially outweighs its probative value.

Steven Goode, Olin Guy Wellborn, II, and M. Michael Sharlot, 1 *Texas Practice* Guide to the Texas Rules of Evidence: Civil and Criminal § 107.1 at 41 (West 1993)(footnotes omitted).

During direct examination of Gaw, the State solicited the following testimony:

The State: Operating the Handi Food Mart and also living in the area, did you come to know somebody by the name of Robert Tate?

Sandy Gaw: Yes, sir.

The State: Would you describe him as a friend of your family?

Sandy Gaw: Yes, sir.

The State: Is he particularly or was he particularly friendly with any of your brothers and sisters?

Sandy Gaw: He grew up with—actually, when I was little, my older brothers used to play with him and sometimes I joined in.

The State: Would he ever help out at the store?

Sandy Gaw: Sometimes when he saw my mom carrying out some trash or carrying cases of stuff, he'd offer help.

The State: How often would you see him?

Sandy Gaw: When we were younger, he came by pretty often. And then as we got older, he would come by whenever he had a chance to.

The State: There's been some lawyer talk in this courtroom that he may have been misbehaving or trying to steal stuff from people at your parents' store. Had you ever seen him act like that?

Sandy Gaw: No, sir, never.

The State: Did you ever see him misbehave at all in or around your family's store?

Sandy Gaw: No, sir.

The State: Had you ever seen him cause trouble out there at the store?

Sandy Gaw: No, sir.

The State's argument that Gaw's testimony was not character evidence because it

merely established Tate's friendship with the Gaws and was offered only to explain his conduct in the robbery is untenable with regard to the last three questions asked. Asking about Tate's misbehavior or his causing trouble was clearly asking about his character. That the State improperly [6] solicited character evidence does not, however, mean that the trial court abused its discretion in not permitting appellant's proffered rebuttal questions about Tate's criminal history. While appellant's rebuttal was admissible per the "open door" theory, we cannot say the trial court was outside the zone of reasonable disagreement in excluding it. The State's questions were solely related to Tate's character as demonstrated by his conduct *at the store,* but appellant's questions sought to elicit evidence regarding Tate's character *in general.* Appellant did not at trial or on appeal present any arguments as to how Tate's criminal history or character were relevant to any issue in the case. While there was some suggestion in testimony offered by appellant that Tate was looking for trouble that night, this point was never clearly made and its relevance not shown. To admit evidence regarding Tate's *generally* unlawful conduct might reasonably have been viewed as presenting a danger of confusing the jury, which outweighed the questionably probative rebuttal value such evidence may have had. Under the facts presented by this case, the trial court did not abuse its discretion by keeping the rebuttal evidence out. Appellant's fifteenth point of error is overruled.

In his sixteenth point of error, appellant complains the trial court erred in denying his request at punishment for a jury instruction charging the jury not to consider extraneous offense evidence unless it found beyond a reasonable doubt that appellant had committed the offense. The trial

court denied appellant's request and instructed the jury not to consider the extraneous offenses unless it found clear proof that appellant had committed the offense. Appellant's argument is indistinguishable from that raised and rejected in *Adanandus,* 866 S.W.2d at 234. Appellant's sixteenth point of error is overruled.

■ In his seventeenth point of error, appellant argues the evidence is insufficient to support the jury's negative answer to the mitigation special issue. TEX.CODE CRIM. PROC. art. 37.071 § 2(e). This court has repeatedly held that we will not review the sufficiency of mitigation evidence. *See, e.g., Green v. State,* 934 S.W.2d 92, 106–07 (Tex.Crim.App.1996), *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). Appellant's seventeenth point of error is overruled.

The judgment of the trial court is affirmed.

KELLER, J., concurred in point of error fifteen and otherwise joined the opinion of the Court.

McCORMICK, P.J., concurred.

---

**6.** It is never competent for the State to prove the victim's good or peaceable character in the first instance; such evidence becomes admissible only in rebuttal when the opposite has properly admitted on behalf of the de-

fense, or when the defendant seeks to justify the homicide on the ground of threats made by the deceased. *Hatley v. State,* 533 S.W.2d 27 (Tex.Crim.App.1976).