# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00644-CR

**Martin Dominich DiCarlo, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT NO. 07-1507-K277, HONORABLE KEN ANDERSON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Martin Dominich DiCarlo was convicted of felony driving while intoxicated. Finding he had previous felony convictions for DWI, the jury assessed sentence at life in prison. DiCarlo contends that he was harmed by the prosecutor's comments during voir dire about the punishment range for habitual offenders, and by the erroneous admission of an audiotape of a telephone conversation with his brother. We affirm.

Appellant's vehicle was stopped by a police officer who testified that he saw the vehicle swerve several times onto the fog line of northbound U.S. Highway 183, change speeds repeatedly, and change lanes without signaling while exiting the freeway. At the stop, the officer noted that appellant's eyes were glassy and bloodshot, his speech was slurred, his statements inconsistent, and his manner tense. The officer testified that appellant showed multiple signs of intoxication during field sobriety tests including the horizontal gaze nystagmus test, the walk-and-

turn test, and the one-leg stand test. Appellant offered to provide a breath sample, which revealed a blood-alcohol concentration of .139 and .144. Appellant introduced evidence that he has diabetes and that several of the intoxication indicators are also consistent with a diabetic who has low blood-sugar levels. The officer testified that he knew that some behaviors stemming from a diabetic episode could resemble intoxication indicators, but that appellant's behaviors were consistent with alcohol intoxication rather than a diabetic episode. Appellant stipulated that he had previously been convicted at least twice for DWI.

Appellant complains that, during jury selection, the State improperly commented on his previous offenses. When asking whether potential jurors could consider the full range of punishment, the prosecutor invoked hypothetical situations involving an offender who had previous offenses that could garner punishment as long as life imprisonment.[1] DiCarlo did not object to

---

[1] For instance, the prosecutor stated:

> And again, in a hypothetical case, not necessarily saying this defendant, but you might hear evidence that a defendant has been convicted more than once, at least twice, been to prison before for two other felonies, went in, served a prison sentence, got out, did it again, got out, and then committed the crime that the jury would be deciding.

She also asked:

> If it changed and you heard evidence that there had been two prior felonies and the range of punishment was 25 to 99 or life, is there anybody who can't envision anything out there at all where they could assess 99 years or life?

> Now, don't—I think that I asked that kind of confusingly. Is there anybody who just could never see themselves considering—I don't mean you're promising to give it, but just keep an open mind and consider 99 years or life. Does anybody feel like you could just never do that?

2

these statements during voir dire. Failure to object to comments during voir dire waives appellate review regarding those comments. *See* Tex. R. App. P. 33.1(a); *Penry v. State*, 903 S.W.2d 715, 741 (Tex. Crim. App. 1995); *see also Fuentes v. State*, 991 S.W.2d 267, 276 (Tex. Crim. App. 1999) (challenge to court's comments during voir dire waived absent timely objection). DiCarlo did not preserve any error on this issue.

DiCarlo next complains that the court erred by admitting the recording of a telephone conversation he had with his brother while he was incarcerated. We review the admission of evidence for an abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). Any error that does not affect substantial rights must be disregarded. Tex. R. App. P. 44.2(b).

Appellant made the telephone call at issue, imploring his brother to get him released from jail. Appellant's brother declined, reiterating that he has told appellant repeatedly not to drink and drive. Appellant's brother stated that neighbors were telling him not to bail appellant out for fear that appellant would drink and drive again that night. The portion of the conversation on which appellant relies in his brief ended with appellant's brother saying, "Well, you know what, if you wouldn't [have] drank and drive you wouldn't have been there either." Appellant responded,

---

In response to a venire member's statement that such a sentence would be overkill, the prosecutor stated as follows:

> And it's certainly at the point in time—And I'm not trying to be evasive, but neither Mr. Senter or I are allowed to tell you the facts of this case or what you might hear either at the guilt/innocence stage or at the punishment stage if you get there, but just keep in mind, too, it could be the worst set of facts, the most criminal history, the worst, you know, other crimes for different things. Just, you know, keep an open mind and think about what might be out there. Is there anybody else that says you could never even envision assessing life or 99 years?

"Well, we all make mistakes, but I'm paying for . . . ." Appellant's brother responded, "Oh yeah, yeah, yeah, yeah, yeah—you've made five . . . five . . . ."

Appellant argues that the conversations were irrelevant and that their probative value was greatly outweighed by their prejudicial effect. He contends that the conversation was generally about his past, his brother's previous warnings, and others' opinions about appellant, and did not bear on any fact of consequence regarding the offense at issue. He contends that his statement that "we all make mistakes" is too vague to be probative of whether he was intoxicated when arrested. Appellant contends that these side issues were not simply irrelevant but inflamed the jurors' minds against him. Appellant also contends that the brothers' use of coarse language was irrelevant to whether he was intoxicated but likely prejudicial to his case.

The State responds that the conversation is relevant and probative of guilt because appellant, by failing to contradict his brother's assertions that appellant was intoxicated, adopted those assertions and tacitly admitted the offense. The State rejects the idea that the brothers' language was unfairly prejudicial. Finally, the State argues that the recording was admissible to impeach appellant's brother's testimony that the indicators of intoxication observed by the arresting officer were consistent with appellant's behaviors when experiencing low blood sugar levels.

We conclude that the court did not abuse its discretion by admitting the recording. The contents of the recording are not tremendously probative of whether appellant was intoxicated, but neither are they unfairly prejudicial. This case is distinct from *Abdygapparova v. State*, on which appellant relies for the proposition that communications from outsiders are not relevant to the offense at hand and are unduly prejudicial. 243 S.W.3d 191, 203-04 (Tex. App.—San Antonio 2007,

4

pet. ref'd). In that case, the defendant (a woman) was charged with sexual assault and capital murder. The trial court admitted a letter sent to the defendant in which the writer (a man) expressed sexual desires and fantasies involving the defendant and other women. The prosecution offered the letter to impeach the defendant's denial that she ever had sex with women. *Id*. The court of appeals held that the admission of the letter was error because the defendant had never met the writer, whose fantasies were irrelevant to the defendant's sexual orientation or whether she sexually assaulted the victim. *Id.* Here, however, the brother's side of the conversation was offered to impeach the brother's own testimony regarding the effects of diabetes and to blunt the defense theory that appellant's intoxication symptoms were a diabetic episode. Both sides of the conversation were relevant for the arguable inference that appellant tacitly admitted committing the offense. The coarseness of the language used might have offended some jurors, but we are not persuaded that it made the jury more likely to convict appellant. We find no error in the admission of the recording.

Even if the admission of the recording were error, we conclude that it did not harm appellant. In a separate, recorded conversation with his ex-wife discussing why he was in jail, appellant stated, "It's my fault for drinking and driving." The arresting officer reported observing signs consistent with intoxication while appellant was driving and while he was performing field sobriety tests. Most compelling is appellant's blood-alcohol concentration measured by the breath test on which both readings—.139 and .144—were well higher than the acceptable .08 level for legal driving. In light of this evidence, we conclude that a coarsely worded conversation between brothers alluding to appellant's guilt did not influence the jury's decision and did not affect appellant's substantial rights.

5

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   August 14, 2009

Do Not Publish