# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00486-CR

Raheem Generous Gordon, Appellant

v.

The State of Texas, Appellee

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 59763, HONORABLE JOE CARROLL, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Raheem Generous Gordon pleaded true to allegations that he violated the terms and conditions of his deferred adjudication community supervision. In its judgment adjudicating guilt, the trial court ordered Gordon to pay $1,235 in attorneys' fees and $458.35 in restitution. Gordon, who had been determined to be indigent in prior proceedings in the same case, argues that the evidence was factually insufficient to support the trial court's apparent conclusion that his financial circumstances had materially changed. He also argues that the trial court erred in ordering the payment of restitution in its written judgment when it had not been pronounced orally. We reform the trial court's judgment to delete the assessments for attorneys' fees and restitution and, as reformed, affirm.

Gordon pleaded guilty to aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West Supp. 2009). Pursuant to a plea agreement, the trial court ordered

Gordon to be placed on deferred adjudication community supervision for four years. As a condition of his community supervision, the trial court also ordered that Gordon pay $558.35 in restitution for medical bills and emergency medical services.

Three years later, the State filed a motion to adjudicate based on allegations that Gordon had violated the terms and conditions of his community supervision. One of those violations was Gordon's failure to pay the restitution ordered. At the time of the State's motion, Gordon still owed $458.35.

Gordon signed a judicial confession admitting the truth of the State's allegations. A hearing was held, during which Gordon offered some testimony as to his financial circumstances during his community supervision, before he was again incarcerated for violating the terms of his community supervision. At the conclusion of the hearing, the trial court orally sentenced Gordon to two years in prison, but made no mention of either attorneys' fees or restitution. In its written adjudication of guilt, however, the trial court ordered Gordon to pay the remaining restitution owed—$458.35—as well as $1,235 for reimbursement of court-appointed attorneys' fees.

In his first issue, Gordon argues that the evidence was factually insufficient to support the trial court's order of attorneys' fees. The parties agree that the court's order of attorneys' fees need not have been a part of its oral pronouncement. *See Weir v. State*, 252 S.W.3d 85, 88 (Tex. App.—Austin 2008), *rev'd in part on other grounds*, 278 S.W.3d 364 (Tex. Crim. App. 2009). They dispute only whether the evidence was factually sufficient to support the court's order requiring Gordon to reimburse the county for court-appointed attorneys' fees.

2

In evaluating the factual sufficiency of the evidence, we view all the evidence in a neutral light and will set aside the verdict only if we are able to say, with some objective basis in the record, that the conviction is clearly wrong or manifestly unjust because the great weight and preponderance of the evidence contradicts the verdict. *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). We cannot conclude that a conflict in the evidence justifies a new trial simply because we disagree with the fact-finder's resolution of that conflict, and we do not intrude upon the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *See id.* at 417; *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The fact-finder may choose to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In our review, we discuss the evidence that, according to appellant, undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Article 26.05 of the code of criminal procedure governs the assessment of court-appointed attorneys' fees. Included in article 26.05 is a provision authorizing the trial court to order reimbursement of attorneys' fees by the defendant—in full or in part—if the court determines that the defendant has the financial resources. Tex. Code Crim. Proc. Ann. art. 26.05 (West Supp. 2009). According to the court of criminal appeals in *Mayer v. State*, a trial court order to reimburse court-appointed attorneys' fees can be challenged for sufficiency of the evidence to support it and, therefore, such challenge can be raised for the first time on appeal. 309 S.W.3d 552, 554-56 (Tex. Crim. App. 2010); *see Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001) ("A claim regarding sufficiency of the evidence need not be preserved for review at the trial level and is not

waived by the failure to do so."). The court also held that if the evidence is found to be insufficient, the preferred remedy is not remand to the trial court, but reformation of the judgment to delete the order for payment of attorneys' fees. *Mayer*, 2010 Tex. Crim. App. LEXIS 100, at \*15.

When Gordon was initially indicted for the underlying offense, he was determined to be indigent and appointed an attorney. Likewise, following the State's motion to adjudicate, Gordon completed a financial questionnaire, and his request for a court-appointed attorney was granted. Thereafter, he was presumed to remain indigent absent a material change in his financial circumstances. *See* Tex. Code Crim. Proc. Ann. art. 26.04(p) (West Supp. 2009). Following the hearing but before the entry of judgment, the trial court apparently determined that, based on evidence adduced at his punishment hearing, Gordon's financial situation had materially changed.

Evidence presented to the trial court includes Gordon's testimony that, during the time that he was on community supervision, he had intermittently lived at his gym, where he was training as a professional boxer, because he had nowhere else to go and could not pay for an apartment. Gordon stated that it was difficult to find a good job that would allow him to pursue his boxing. However, he did state that, beginning on May 4, 2008, he had been assisting a man who owned a landscaping company. On the days he worked, he earned $70 to $80 per day. He testified that during that time he had a car, but the car "just sat" because it did not work. At some point, he began renting a house and testified that he had a dream of owning "a few houses," houses that he would buy with money he hoped to eventually make from his boxing career.

Based on our review of the record, we cannot conclude that there was factually sufficient evidence to support the trial court's apparent determination that there had been a material

change in Gordon's financial circumstances. At the time of the hearing, Gordon was incarcerated for violating his probation and had been incarcerated for about ninety days. Gordon testified that, before that, he had been working with a landscaping company for about a year and earned about $70 to $80 per day when he did work. This was the same information provided in his earlier financial questionnaire—completed before he was appointed an attorney—on which Gordon indicated that this was not steady employment. There is no evidence—either from the questionnaire or from Gordon's testimony—as to how much Gordon ultimately earned during his time there. For some period of time, Gordon apparently had enough money to rent a house, the rental payment for which had also been noted on his financial questionnaire. However, as noted, there was no evidence presented as to how much money Gordon ultimately earned or as to whether Gordon's income was sufficient to cover his basic living expenses. Beyond the fact that Gordon had been incarcerated, there is no indication that his financial circumstances had changed at all between the time that he was determined to be indigent and the time that the that the court entered its judgment ordering Gordon to pay attorneys' fees. Although Gordon had been training as a professional boxer and had a "dream" of continuing to pursue this career and earning a substantial income in the process, there is no indication that—at the time he was sentenced—he had earned any money at all from his boxing, and he would certainly be unable to continue to pursue his boxing career—or to hold any job at all—while in prison.

Our review of the record shows that the evidence was factually insufficient to support the trial court's determination that Gordon's financial circumstances had materially changed, and therefore, the presumption of indigence remains. *See id.* Accordingly, pursuant to *Mayer*, we reform

5

the trial court's judgment to delete the order for payment of court-appointed attorneys' fees. *See* 2010 Tex. Crim. App. LEXIS 100, at \*15.

In his second issue, Gordon argues that the trial court erred in ordering the payment of restitution in the written judgment when it had not orally ordered payment of restitution at the time of sentencing. The State concedes that restitution is part of the sentence and must be included in the oral pronouncement. *See Abron v. State*, 997 S.W.2d 281, 282 (Tex. App.—Dallas 1998, pet. ref'd). Where, as here, the defendant had initially been given deferred adjudication, sentencing does not occur until community supervision is revoked. *See Taylor v. State*, 131 S.W.3d 497, 502 (Tex. Crim. App. 2004). Thus, the oral pronouncement made at the sentencing hearing following the State's motion to adjudicate controls, and we reform the judgment to delete the order of restitution. *See id.*

The trial court's judgment is reformed to delete attorneys' fees and restitution. As reformed, the judgment is affirmed.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Modified and, as Modified, Affirmed

Filed: August 4, 2010

Do Not Publish