Affirmed and Memorandum Opinion
filed March 24, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00252-CR



Will Milberger, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the County Criminal Court at Law No. 14

Harris County, Texas

Trial Court
Cause No. 1604878



 

MEMORANDUM OPINION 

Appellant Will Milberger appeals his conviction for
misdemeanor assault of a family member.  After the jury found him guilty, the
trial court assessed punishment at one year’s incarceration in the county
jail.  The trial court later suspended the sentence of incarceration and
granted probation for eighteen months.  In one issue, appellant claims the
evidence was factually insufficient to support his conviction.  We affirm.

Background

            The State
presented evidence that on the night of June 5, 2009, appellant and his wife, Jan
Milberger, were at their home in Houston with their fourteen-year-old daughter
B.M.  Jan was recovering from bronchitis and did not feel well.  Earlier in the
evening, appellant had taught a karate class.[1]

            After arriving
home from his karate class, appellant consumed a twelve-pack of beer and some
amount from a bottle of wine.  Later that evening, appellant went outside and
urinated on the side of the house.  When appellant returned inside and told Jan
what he had done, an argument started.  During the course of the argument, appellant
directed obscenities at Jan.  Jan told appellant that she wanted him to leave
the house.[2]

            Believing
appellant had left, Jan told B.M. what happened, explained that appellant was
leaving the house, and then went to bed.  Appellant, however, had not left the
house.  Appellant went to the bedroom and called Jan, who was in bed, another
expletive.  Appellant then grabbed a pillow and started hitting Jan, while
yelling expletives at her over and over.  After hitting her with the pillow,
appellant jumped on the bed, straddled Jan, and began pushing her from side to
side with his hands.  She banged against his legs as he pushed her back and
forth.  Jan testified that appellant’s actions caused her physical pain.  Jan told
appellant to stop and that he was hurting her.[3] 
After pushing her back and forth, appellant suddenly grabbed Jan by the neck. 
Jan believed that if she fought back, he would snap her neck.  As her vision
began to dim, Jan heard their daughter, B.M., asking through the door what was
happening.  At that point, appellant removed his hands from Jan’s neck and her
vision returned.  Jan, in an effort to calm appellant, then apologized to him
and told him she was only giving him a hard time because she had been sick. 
Appellant responded by telling her to “just talk to me next time or
something.”  He then got off Jan and left the room.

            B.M. did not see
what happened in the bedroom, but she did hear what happened.  B.M. testified
that she had been in her bathroom brushing her teeth when she heard yelling
coming from her parents’ bedroom.  Concerned, she walked over to her parents’
side of the house.  Outside her parents’ closed door, B.M. heard her father
screaming obscenities at her mother.  She heard her mother say, “Stop.  Stop. 
You’re hurting me.  Stop.”  B.M. debated whether to call 911 because it sounded
like her father was attacking her mother.  She then heard a silence from the
bedroom so she called out loudly to make sure they could hear her.  Right after
she called out, B.M. heard her mother say, “[I]t’s okay, yes, just calm down,
I’m not feeling well.”  Moments later, B.M. saw appellant exit the room with a
strange look in his eye.  B.M. then went back to her room and locked the door. 
She was afraid of her father.  B.M. eventually went to sleep, though it was
difficult.

            Jan did not feel
like she could leave the house immediately after the attack because appellant
was “guarding her.”  Appellant kept coming back into the bedroom throughout the
rest of the night, checking on Jan.  She came out of her room a few times to
get water, but she did not have a phone in the bedroom.  She was terrified. 
She was afraid to open an outside door to leave because she feared the alarm
chime would alert appellant.  Jan finally suggested that appellant take some
Benadryl to help him sleep.  The Benadryl worked and when Jan felt certain
appellant was asleep, she retrieved her cell phone from the kitchen.  Jan
stated that she was afraid to call the police because she feared appellant
would wake up and attack her before the police could get in the door.  Jan
called her older daughter, an attorney in San Antonio.  Jan then awakened B.M. and
they left the house.  The older daughter called Jan’s middle daughter, who then
called the police.  

Not long after, Jan and B.M. returned to the house
and met the responding sheriff’s deputies outside in the driveway.  She did not
have any marks or bruises that the deputies could see, but one of the deputies
testified that was not unusual in assault cases because bruises can develop
later.[4] 
The testifying deputy spoke to both Jan and B.M. separately and then went
inside the house and awakened appellant.  Appellant admitted that he had argued
with Jan, but denied any violence.  The deputy saw some signs of appellant’s
intoxication.  

Jan testified that she had recently inherited several
million dollars, that at the time of trial she and appellant were divorcing,
and that she wanted sole custody of B.M.  She was further cross-examined about
how to disable the door chimes on the alarm system, the location of phones she
could have used to call for help, and the fact that she called her
lawyer-daughter rather than the police.

Appellant also presented evidence from a martial arts
expert, who testified that the attack as described was not what he would expect
of a sixth-degree black belt.  The expert further described ways to break
choke-holds, which he believed someone like Jan, who had a first-degree black
belt, would know.  The martial arts expert stated that, in his opinion, Jan’s
“passive” technique while appellant was choking her was unusual and did not
make sense.  

Sufficiency
of the Evidence

In his sole issue, appellant challenges the factual
sufficiency of the evidence to support his conviction.  While this appeal was
pending, the Court of Criminal Appeals held that only one standard should be
used in criminal cases to evaluate the sufficiency of the evidence to support
findings that must be established beyond a reasonable doubt: legal
sufficiency.  Brooks v. State, 323 S.W.3d 893, 894-95 (Tex. Crim. App.
2010) (plurality op.); id. at 926 (Cochran, J., concurring). 
Accordingly, we review the sufficiency of the evidence in this case under a
rigorous and proper application of the legal sufficiency standard of Jackson
v. Virginia, 443 U.S. 307 (1970).  Brooks, 323 S.W.3d at 906; Pomier
v. State, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no
pet.).  When reviewing the sufficiency of the evidence, we view all of the
evidence in the light most favorable to the verdict to determine whether the
fact finder was rationally justified in finding guilt beyond a reasonable
doubt.  Brooks, 323 S.W.3d at 899.  This court does not sit as a
thirteenth juror and may not substitute its judgment for that of the fact
finder by re-evaluating the weight and credibility of the evidence.  Id.
at 901-02; see also Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim.
App. 2007).  We defer to the fact finder’s resolution of conflicting evidence
unless the resolution is not rational.  Brooks, 323 S.W.3d at 902 n.19,
907.

A person commits misdemeanor assault if the person
intentionally, knowingly, or recklessly causes bodily injury to another,
including the person’s spouse.  Tex. Penal Code § 22.01(a) (Supp. 2009); see
Hudson v. State, 179 S.W.3d 731, 741 (Tex. App.—Houston [14th Dist.] 2005, no
pet.).  Bodily injury is defined as “physical pain, illness, or any impairment
of physical condition.”  Tex. Penal Code § 1.07(a)(8) (Supp. 2009).  

Jan’s testimony established each of these elements.  Jan,
appellant’s wife, described how appellant pushed her with his hands and used
his hands to squeeze her neck until her vision dimmed.  She felt physical pain
from the attack.  Direct evidence that a victim suffered pain is sufficient
evidence of bodily injury.  Laster v. State, 275 S.W.3d 512, 524 (Tex.
Crim. App. 2009).  That appellant intended to cause the pain and injury can be
inferred from his acts and the hurling of obscenities at Jan.  See Guevara
v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (intent must generally
be inferred from the circumstantial evidence surrounding an incident, including
the acts, words, and conduct of the accused).  The testimony of the complainant
is sufficient to support the jury’s verdict.  See Hudson, 179 S.W.3d at
741; Johnson v. State, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.]
2004, pet. ref’d) (“The testimony of a single eyewitness, such as [complainant]
is sufficient to support a felony conviction.”).  

Moreover, B.M. testified that, based on what she
heard, it “certainly sounded likely my dad was attacking my mom.”  Her
testimony about what she heard corroborated Jan’s description of the attack.  Viewing
all of the evidence in the light most favorable to the verdict, we conclude the
jury was rationally justified in finding guilt beyond a reasonable doubt.  See
Brooks, 323 S.W.3d at 899.

In support of his claim that the evidence is
insufficient, appellant lists, without further explanation, four arguments: (1)
although Jan described a choking incident, the responding officer observed no
signs of injury; (2) B.M. did not see what actually transpired in the bedroom;
(3) as established by the martial arts expert, the type of choking attack described
is not what one would expect a sixth-degree black belt to use; and (4) Jan had filed
for divorce and was seeking sole custody of the couple’s daughter, thus giving
her a motive to falsely accuse appellant.  

Appellant’s arguments amount to an attack on the weight
and credibility of the State’s evidence.  See Fuentes v. State, 991 S.W.2d
267, 271 (Tex. Crim. App. 1999).  The jury, as the trier of fact, is the sole
judge of the credibility of the witnesses and of the strength of the evidence. 
Id.; see also Williams, 235 S.W.3d at 750 (reviewing courts give
deference to “‘the responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.’”).  The jury was the sole judge
of the credibility of, and weight to be given, Jan’s testimony, B.M.’s
testimony, Jan’s alleged motive for false accusations, and the strength of the
evidence provided by the State.  See Fuentes, 991 S.W.2d at 271; Johnson,
176 S.W.3d at 78 (alibi testimony, lack of physical evidence, and differences
in witness testimony were all factors for the jury to consider in weighing the
evidence.).  We defer to the jury’s weight and credibility determinations and
find the evidence sufficient to support the jury’s verdict.

For the preceding reasons, we overrule appellant’s
sole issue.

 

Conclusion

Having overruled appellant’s sole issue, we affirm
the judgment.  

 

 








                                                                                    

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

 

Panel consists of Justices Brown, Boyce,
and Jamison.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
Appellant is a sixth-degree black belt in Soo Bahk Do, a Korean martial art. 
Some years before the incident in question, Jan had obtained a first-degree
black belt in karate.  For a while, Jan worked at the karate school with
appellant.





[2]
Appellant and Jan were trying to work on their marriage during this time. 
Appellant had recently moved back into the house after a period of separation.





[3]
Jan believed that appellant’s karate skills so outmatched her own abilities,
she could only fight back with her mind.  She believed she had to try to calm
him down by not causing him any pain, or he would cause her further harm.





[4]
The State did offer photographic evidence of bruises that developed on Jan
several days later.  The photos, apparently taken with a cell phone, were not
of good quality.