COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-434-CR

 

 

DAMION DONELL JACQUETT                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.
Introduction








Appellant Damion Donell Jacquett was charged with the offense of
resisting arrest.  A jury found him
guilty and assessed punishment at 365 days= confinement with a recommendation of community supervision.  The jury also assessed a fine of $2,500.  The trial court suspended the jail
confinement and placed Jacquett on community supervision for a period of
twenty-four months. In two issues, Jacquett appeals the trial court=s judgment.  We affirm.

II.
Background Facts

In this case, the issue of
Jacquett=s use of force against the police was hotly disputed at trial, with
the witnesses dividing into two groups: 1) Jacquett and his family, and 2) the
police officers.  Jacquett asserts that
the evidence was both legally and factually insufficient to support his
conviction.  In the alternative, he
argues that if the jury finds that the evidence was legally and factually
sufficient to support his conviction, we hold that the evidence was sufficient
to prove that he used the force for the purpose of protecting himself after the
police used greater force than necessary in effectuating the arrest. 

A. The Police Officers= Testimony

Officer Joshua Davis
testified that when he responded to a trespass call, the resident, Jacquett,
refused to open the door.  Officer Davis
spoke to Jacquett=s mother,
Mildred Davis, and to his sister, Dominque Potier, who were standing outside of
the residence.  Officer Davis learned
that they had come to Jacquett=s home to retrieve Dominique=s belongings, that Jacquett would not let them enter the residence to
gather the belongings, and that Jacquett had hit his sister when she attempted
to enter the residence.








A second officer, Officer Ray
Jewett, arrived on the scene to assist Officer Davis.  When Jacquett eventually opened the door,
Officer Jewett approached Jacquett, told him that he was under arrest, and
instructed him to put his hands behind his back.  At that point, Jacquett struck Officer Jewett
with his elbow.  Officer Jewett then
grabbed Jacquet and attempted to place him on the floor to handcuff him.  The officer testified that Jacquett A[put up] a significant amount of resistance.@  Even after the officers
managed to handcuff Jacquett, they stated that he continued to resist and yell
obscenities. Officer Jewett testified that throughout the altercation, he used
the minimum amount of force necessary to make the arrest.  The officers also testified that Jacquett
never informed them that he had recently undergone back surgery. In fact,
Officer Jewett testified that he was surprised to learn that Jacquett had
recently had surgery because of the resistance and strength he displayed during
the arrest.

B. The Family=s Testimony








Ms. Davis testified that when
the police arrived at the scene, she observed one of the officers attempt to
bend Jacquett over in order to place handcuffs on him.  She stated that she told the officer that
Jacquett had just had back surgery and could not bend over.  However, she stated that despite her plea to
the officers not to hurt Jacquett, one officer pepper-sprayed Jacquett while
the other officer threw him down on the floor. 
She testified that during Jacquett=s altercation with the police, he was fully cooperative and that he
did not yell or cuss at the officers. 

Jacquett=s common law wife, Augusta Carranza Jacquett, also testified at
trial.  She stated that she heard Ms.
Davis tell both officers that Jacquett had just had back surgery, yet both
officers grabbed him, told him to lie down, and appeared to choke him.  Carranza testified that she observed Jacquett
use force against the officers, but stated that he only used the force in order
to protect his back.

Lastly, Jacquett
testified.  He stated that he believed
that his actions were necessary to protect his back from injury.  Further, he testified that he was not
informed that he was under arrest until after he had been forced to take action
to protect himself.  

III.
Sufficiency of the Evidence

In his first issue, Jacquett
contends that the evidence is legally and factually insufficient to support his
conviction. 

A. Standards of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App.2005).








In contrast, when reviewing
the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim.App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: (1) when the evidence supporting
the verdict or judgment, considered by itself, is too weak to support the
finding of guilt beyond a reasonable doubt; or (2) when there is evidence both
supporting and contradicting the verdict or judgment and, weighing all of the
evidence, the contrary evidence is so strong that guilt cannot be proven beyond
a reasonable doubt.  Id. at 484‑85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 
In performing a factual sufficiency review, we are to give deference to
the fact finder's determinations, including determinations involving the
credibility and demeanor of witnesses.  Id.
at 481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder's. Zuniga, 144 S.W.3d at 482.

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486‑87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant's complaint on appeal. 
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B. Legally and Factually
Sufficient Evidence

A person is guilty of
resisting arrest if that person intentionally prevents or obstructs one he
knows is a peace officer from effecting an arrest of that person by using force
against the peace officer.  Tex. Penal Code Ann. ' 38.03(a) (Vernon 2003). 
Jacquett argues that the jury disregarded uncontroverted medical
testimony that established that he would have been unable to exert the degree
of force required to resist arrest.  This
testimony came from Ms. Davis, a registered nurse.  She testified that Jacquett was unable to
bend, twist, or pull or push anything heavy as a result of his recent back
surgery. 








Jacquett is correct in his
assertion that this evidence was not controverted by other medical
testimony.  However, to the extent that
Ms. Davis=s testimony
indicated that Jacquett could not have physically resisted arrest, it was
controverted by the police officers= eyewitness testimony in which they testified that they in fact
observed Jacquett resist and use force against the officers.

Further, it is well
established that a jury is entitled to believe all, some, or none of a witness=s testimony.  Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  Expert witnesses, although capable of aiding
the trier of fact in determining an issue, do not dictate the results of the
jury=s determinations.  Dashield
v. State, 110 S.W.3d 111, 115 (Tex. App.CHouston [1st Dist.] 2003, pet. ref'd). 
We note that even undisputed and uncontradicted evidence is subject to a
credibility analysis by the jury, which may reasonably disbelieve and reject
it. See e.g. id. (holding that factfinder may disbelieve uncontradicted
expert testimony).  








Consequently, the jury in
this case was free to believe or disbelieve any portion of Ms. Davis=s testimony.  Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986), cert. denied, 488 U.S. 872
(1988).  Likewise, reconciliation of
conflicts in the evidence is within the exclusive province of the jury.  Losada v. State, 721 S.W.2d 305, 309
(Tex. Crim. App. 1986).  Evidence is not
rendered factually insufficient simply because the jury resolved conflicting
facts in the State=s
favor.  Cain, 958 S.W.2d at
410.  

By its verdict, the jury
determined that the police officers were believable, while Jacquett and his
family were not.  This determination is
well within the province of the jury.  Fuentes
v. State, 991 S.W.2d 267, 271 (Tex. Crim. App.), cert. denied,
528 U.S. 1026 (1999).  Therefore, after
viewing the evidence in the light most favorable to the verdict, we hold that a
rational trier of fact could have found beyond a reasonable doubt that Jacquett
committed the offense of resisting arrest. 
See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  Furthermore, viewing all of the evidence in a
neutral light, favoring neither party, we also conclude that the evidence taken
alone, is not too weak to support the finding of guilt beyond a reasonable
doubt and that the contrary evidence is not so strong that guilt cannot be
proven beyond a reasonable doubt.  See
Zuniga, 144 S.W.3d at 481.  After
reviewing the entire record, we conclude that the evidence is legally and
factually sufficient to support Jacquett=s conviction for resisting arrest. 


IV.
Self-Defense








As a part of his first issue,
Jacquett alternatively argues that if we hold that the elements of resisting
arrest were sufficiently proven both legally and factually, we hold that the
evidence was sufficient to prove that he used the force for the purpose of
protecting himself after the police used greater force than necessary in
effectuating the arrest. 

After a defendant has
introduced some evidence of a defense, the State bears the burden of persuasion
to disprove it.  Zuliani v. State,
97 S.W.3d 589, 594 (Tex. Crim. App. 2003); Saxton v. State, 804 S.W.2d
910, 913-14 (Tex. Crim. App. 1991).  This
burden does not require the State to introduce evidence disproving the defense;
rather, it requires the State to prove its case beyond a reasonable doubt.  Zuliani, 97 S.W.3d at 594; Saxton,
804 S.W.2d at 913. 

As part of our legal
sufficiency review, we held that a rational trier of fact could have found
beyond a reasonable doubt that Jacquett committed the offense of resisting
arrest.  Therefore, the State carried its
burden of disproving Jacquett=s defense.  Accordingly, we
overrule Jacquett=s first
issue.

V.
Denial of Mistrial

In his second issue, Jacquett
complains that the trial court improperly denied his motion for mistrial based
on the following prosecutorial jury argument during the punishment phase of
trial: 

[Prosecutor]:
What=s he
say? Well, in the statement that he gives to the police before he knows he=s got
two charges to defend against, when he thinks it=s
just what happened between him and his momC

 








[Defense
Attorney]: Your Honor, I=d
object to that reference to two charges. That=s not
in evidence.

 

[Prosecutor]:
I=ll
withdraw the statement.

 

[Defense
Attorney]: Your Honor, I=m
going toCI
move to strike.

 

[The
Court]: Okay. The jury is instructed to disregard the last statement by the
prosecutor and not use it for any purpose in this trial whatsoever.

 

[Defense
Attorney]: Move for a mistrial.

 

[The Court]: Denied.

When the trial court sustains
an objection to jury argument and instructs the jury to disregard but denies a
defendant's motion for a mistrial, the issue is whether the trial court abused
its discretion in denying the mistrial. 
Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  Only in extreme circumstances in which the
prejudice caused by the improper argument is incurable, i.e., Aso prejudicial that expenditure of further time and expense would be
wasteful and futile,@ will a
mistrial be required.  Id.; see
also Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert.
denied, 542 U.S. 905 (2004). 
Generally, an instruction to disregard impermissible argument cures any
prejudicial effect.  Wesbrook v. State,
29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied, 523 U.S. 944
(2001). 








In determining whether the
trial court abused its discretion in denying the mistrial, we consider (1) the
severity of the misconduct (prejudicial effect), (2) curative measures, and (3)
the certainty of the punishment assessed absent the misconduct.  Hawkins, 135 S.W.3d at 77; Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), cert.
denied, 526 U.S. 1070 (1999).

Assuming, without deciding,
that the complained‑of remark was improper, we hold that the trial court
did not abuse its discretion by denying a mistrial.  In this case, the challenged comment appears
to be one that the jury could have reasonably deduced from the evidence.  In the guilt/innocence phase of the trial,
the jury heard testimony from two police officers stating that they believed
that Jacquett had assaulted his mother and sister.  A jury would not likely be shocked to have
heard that Jacquett would be charged for those offenses; hence, any prejudicial
effect of the challenged reference was minimal. 
Additionally, the trial court attempted to cure any harm from the
challenged remark by issuing an immediate instruction to disregard the
statement.  Further, the statement
comprised only one sentence in the State's closing argument.  








Finally, as to the certainty
of the punishment, the record supports the punishment assessed by the jury,
absent the misconduct.[2]  The State elicited testimony from multiple
witnesses concerning the events that transpired on the day of the offense.  As stated above, two police officers
testified that Jacquett physically resisted arrest after they repeatedly asked
him to stop resisting and stop fighting. 
Additionally, two different officers who responded to one of the
original officer=s call for
assistance, testified that they observed Jacquett thrashing about while
Officers Davis and Jewett attempted to handcuff him. Moreover, all four
officers testified that during the altercation, Jacquett never informed them
that he had recently undergone back surgery. 
Accordingly, we hold that the trial court's instruction to the jury to
disregard the prosecutor's comment cured any resulting prejudicial effect and that
the trial court did not abuse its discretion by denying Jacquett=s request for a mistrial.  See
Hawkins, 135 S.W.3d at 77; Wesbrook, 29 S.W.3d at 115.  We overrule Jacquett=s  second issue.

 








VI.
Conclusion

Having overruled both of
Jacquett=s issues, we affirm the trial court=s judgement.

 

 

BOB MCCOY

JUSTICE

 

PANEL B:   HOLMAN, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
June 22, 2006

 

 

 

 

 

 

 











[1]See Tex. R. App. P. 47.4.





[2]Jacquett was convicted of resisting
arrest, which is punishable by confinement in jail for a term not to exceed one
year, a fine not to exceed $4,000, or both. 
See Tex. Penal Code Ann.
'' 12.21, 38.03 (Vernon 2003).  We note that the jury assessed Jacquett=s punishment at 365 days= confinement but recommended that
Jacquett receive community supervision. 
Additionally, the jury assessed a fine of $2,500.