In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00103-CR


______________________________




ROBERT LOYD FERGUSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 40th Judicial District Court


Ellis County, Texas


Trial Court No. 31525CR




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 A jury found Robert Loyd Ferguson guilty of driving while intoxicated (DWI), as charged
in the indictment. See Tex. Penal Code Ann. § 49.04 (Vernon 2003). The jury also found
Ferguson had twice previously, and sequentially, been found guilty of that offense, as charged in the
indictment. See Tex. Penal Code Ann. § 49.09(b)(2) (Vernon Supp. 2006) (DWI third is a third-degree felony). At the punishment trial, Ferguson pled "true" to having been previously and finally
convicted of a felony offense, raising the applicable punishment range to that provided for second-degree-felony offenses. See Tex. Penal Code Ann. § 12.33 (Vernon 2003) (second-degree
punishment), § 12.42(a)(3) (Vernon Supp. 2006) (punishment enhancement). The jury assessed
Ferguson's punishment at twenty years' imprisonment and a $5,000.00 fine. Ferguson now appeals,
challenging the legal and factual sufficiency of the evidence to support his conviction. Ferguson's
attacks concern whether the State's evidence proved he was intoxicated at the time in question. We
overrule both of Ferguson's points of error and affirm his conviction.

I. Applicable Standards of Review and Statutory Provisions

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). Because the jury serves as the sole judge of witness credibility, the jury is free
to accept or reject any witness' testimony, and it is the province of the jury to reconcile conflicts in
the evidence. Duren v. State, 87 S.W.3d 719, 724 (Tex. App.--Texarkana 2002, no pet.) (citing
Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999)).

 In a factual sufficiency review, we review all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak or is so outweighed by the great
weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly
unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 A person commits an offense if he or she operates a motor vehicle while intoxicated. Tex.
Penal Code Ann. § 49.04. Our law defines the term "intoxicated" to mean either "not having the
normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled
substance, a drug, a dangerous drug, or combination of two or more of those substances, or any other
substance into the body" or "having an alcohol concentration of .08 or more." Tex. Penal Code
Ann. § 49.01(2) (Vernon 2003). 

II. The State's Evidence

 Ferguson's appellate issues attack the sufficiency of the State's evidence to establish he was
intoxicated, as defined by our law, at the time in question. The State's evidence as to intoxication
came from three witnesses (a civilian and two police officers) as well as a videotape of part of the
events in question. We will now turn to a review of that evidence.

 A. Jeremiah Ieppert

 Jeremiah Ieppert, an elementary school music teacher, was visiting with some friends at the
Starbucks coffee shop in Waxahachie, Texas, on the evening of Saturday, October 7, 2006. They
were sitting outside in the shop's patio area. While he was drinking coffee, he noticed a customer
approach the shop; this customer "caught the attention of just about every customer there." Ieppert
said this person, whom Ieppert would later identify in open court as Ferguson, drove up in a truck,
got out of the truck, and it appeared that something was wrong with him. Ieppert testified, "[I]t
seemed to me like he was intoxicated[,] and he was having problems walking and stumbling." 
"Personally I thought - - I thought that he was drunk" because "[h]e couldn't walk very well at all." 
Ieppert testified the person had trouble even standing up. Ieppert further testified he was about five
to ten feet away from this strange person at the time of the events in question. Ieppert also testified
that everyone else at Starbucks appeared to similarly suspect this strange new customer was
intoxicated. 

 After this stranger had used the restroom at the coffeehouse and purchased some coffee,
Ieppert saw him drive away in his truck. Ieppert and his friends then talked about whether they
should call the police about this strange person they all suspected of being intoxicated. Ieppert then
decided to not only call police, but he also got into his own vehicle and began following the person
whom Ieppert suspected of being intoxicated. 

 While Ieppert followed the suspect, he noticed the latter's driving was "unsteady." Ieppert
followed the other driver for four or five minutes, until the police arrived. 

 B. Ryan Wilmot

 Ryan Wilmot is a certified peace officer working for the Waxahachie Police Department. 
Wilmot was working in the patrol and traffic enforcement division October 7, 2007, when he was
dispatched to assist Officer Joe Herrera (also of the Waxahachie Police Department), who was, in
turn, pursuing (in a separate police vehicle) a suspected intoxicated driver. The officers and the
suspected intoxicated driver eventually stopped in front of a residence; the suspect got out of his
vehicle and began walking around the house. When Officer Herrera shined a police spotlight on the
suspect, the suspect responded by approaching Officer Wilmot's vehicle. Wilmot then rolled down
his driver's side window and spoke with the suspect, later identified as Ferguson. 

 According to Wilmot's continued testimony, Ferguson's breath and person both strongly
smelled of alcohol. Wilmot also described Ferguson as stumbling several times, having "very
slurred" speech, and having "glassy" eyes. Wilmot relayed these observations and concerns to
Herrera, who then talked to Ferguson and asked Ferguson to perform several field-sobriety tests,
which Wilmot witnessed and testified Ferguson performed poorly. Wilmot described Ferguson as
swaying during the field-sobriety tests; based on his observations, Wilmot concluded Ferguson "was
highly intoxicated." 



 C. Joe Herrera

 Joe Herrera is a seven-year veteran detective and a certified peace officer with the
Waxahachie Police Department. (1) Herrera was working the night of October 7, 2006, when he was
dispatched to a location within the city about a possible intoxicated driver. Herrera located the
suspected vehicle on East Marvin Street and continued following the vehicle until its driver
eventually parked it. While Herrera followed the suspected vehicle, Herrera noted that the
automobile was traveling in excess of the posted speed limit; Herrera did not, however, note that the
suspected vehicle was being driven in an erratic or reckless manner. Once the suspected vehicle
stopped, Herrera witnessed Wilmot make contact with the driver; Wilmot later reported to Herrera
that Wilmot believed that the suspect driver might be intoxicated. At that point, Herrera exited his
patrol vehicle and began talking to the suspect, later identified in open court as Ferguson. Herrera
then asked Ferguson to perform four field-sobriety tests--the horizontal gaze nystagmus (HGN) test,
the walk-and-turn test, the one-legged-stand test, and the vertical gaze nystagmus (VGN)
test--which Ferguson did perform. 

 According to Herrera, Ferguson exhibited six signs of intoxication (out of a maximum of six
possible signs) during the HGN test. Herrera described Ferguson as having slurred speech and the
latter's breath as having "a strong odor of alcohol." Herrera further told the jury that, during the
HGN test, Ferguson had a hard time following the officer's directions. 

 During the walk-and-turn test, Ferguson exhibited five out of eight potential clues suggesting
the person being tested is intoxicated. First, Ferguson had difficulty maintaining his balance while
the officer instructed the suspect on how to perform this test. Ferguson also started the test too soon,
stopped too soon during the test, made an improper turn, and took the incorrect number of steps. 
These poor results suggested to Herrera that Ferguson was intoxicated because (according to
Herrera) two errors during the walk-and-turn test are sufficient to suggest the person is intoxicated. 
 During the one-legged-stand test, Ferguson exhibited two of four signs of intoxication,
according to Herrera. Ferguson swayed and put his foot down during the test. Herrera testified that
exhibiting merely two clues during this test is sufficient to indicate intoxication. The final roadside
test, VGN, revealed no evidence that Ferguson was intoxicated. (2) However, when the VGN test was
conducted back at the police station, Herrera detected nystagmus at that time. 

 Based on the totality of Ferguson's performance during the field-sobriety tests, Herrera
concluded Ferguson was intoxicated "[b]y an unknown type of alcoholic beverage." Herrera then
arrested Ferguson and took him to jail. At the jail, Ferguson was given another opportunity to
perform the field-sobriety tests and give a sample of his breath for analysis of its alcohol
concentration. Ferguson performed the field-sobriety tests, but he refused to give a breath sample. 
According to Herrera, Ferguson's ability to perform the three field-sobriety tests improved slightly
once he got to the police station. Nevertheless, Ferguson was formally charged with felony DWI. 
Herrera told the jury he had no doubt in his mind Ferguson was intoxicated at the time in question. 
 D. The Videotape

 The videotape played for the jury shows Ferguson performing several field-sobriety tests
outside and later again at the police station. During the roadside walk-and-turn test, Ferguson had
to be told several times to put his right foot in front of his left foot, rather than the other way around. 
Ferguson also fell out of the proper stance during instruction on multiple occasions. During the one-legged-stand test, it appears from the videotape that Ferguson almost completely lost his balance on
more than one occasion. Ferguson also failed to follow the officer's instructions on how to perform
the test in that, when he made a mistake, Ferguson would restart his counting rather than merely
continue from the last number he uttered. 

 From the police station portion of the videotape, the jury would have been able to notice that
Ferguson appeared to be extremely unsteady on his feet during the walk-and-turn test. He also fell
out of the proper standing position while Herrera again demonstrates that particular test. During the
one-legged-stand test, Ferguson's speech appeared to be slurred and he exhibited poor balance. He
also counted improperly during this test. Finally, the jury heard Ferguson refuse to give a sample
of his breath for analysis. 



III. Ferguson's Evidence

 Courtney Benavidez and Ferguson both testified for the defense. Benavidez testified that she
has known Ferguson for over twenty years. In fact, it was at her home that the police arrested
Ferguson in connection with the charges that are the basis of this appeal. Benavidez told the jury
that Ferguson is the caretaker for his father, who has Alzheimer's disease. Ferguson often comes
over to Benavidez' house to escape the strain he experiences as a result of taking care of his father;
he will sometimes sleep at the home of Benavidez and her husband. 

 Ferguson admitted during his testimony that he had consumed only two beers at the Courtside
Bar on the day in question; these drinks were consumed during the course of about an hour. 
Ferguson also admitted he had been previously convicted of DWI on two or more occasions. He had
not eaten anything during the day, and he had recently gone to visit his uncle. Ferguson reminded
the jury that he had been wearing cowboy boots at the time of the field-sobriety tests and, therefore,
he believed he had done well in performing the tests. Ferguson told the jury that he tends to fight
when he becomes intoxicated; however, because he did not exhibit any such characteristics on the
night in question, he was not intoxicated. 

IV. Analysis

 The jury heard testimony from Herrera that he believed, based on Ferguson's performance
of the field-sobriety tests and based on Ferguson's general demeanor, that Ferguson had lost the
normal use of his mental and physical faculties by reason of the introduction of alcohol into his
system around the time he was operating a motor vehicle. The jury had also heard from a
disinterested citizen, Ieppert, who described Ferguson as being intoxicated while inside the coffee
shop; Ieppert then continued to describe the latter's subsequent driving as being "unsteady." Finally,
the jury had the opportunity to view the videotape of Ferguson's performance during both the
roadside and police station tests. As outlined above, the videotaped sobriety tests contain several
suggestions that Ferguson was intoxicated during the time at issue. Additionally, the jury could have
legitimately deduced that Ferguson was intoxicated based on his refusal to give a breath sample. See
Gaddis v. State, 753 S.W.2d 396, 399-400 (Tex. Crim. App. 1988). Thus, there is evidence to
support the jury's verdict that Ferguson operated a motor vehicle while intoxicated.

 The jury, however, also heard testimony from Ferguson that he had consumed only two beers
on the day in question, that he was wearing cowboy boots while trying to perform the field-sobriety
tests (which he believed explained his uncoordinated performance), and that he himself believed he
was not intoxicated at the time at issue in this case. This is some evidence contrary to the State's
case for conviction. 

 On balance, however, there was evidence from which a jury could have found the State
proved each essential element of the charge beyond a reasonable doubt. The evidence is, therefore,
legally sufficient to support the jury's verdict under the applicable appellate standards. See Johnson,
23 S.W.3d at 7. Additionally, we cannot say the great weight and preponderance of the evidence in
this case contradicts the jury's verdict, nor can we conclude that the evidence presented to the jury
was so weak that the jury could not have found Ferguson guilty of--subsequent offense. We must,
therefore, conclude the evidence is also factually sufficient. See Roberts, 220 S.W.3d at 524.

 For the reasons stated, we overrule both of Ferguson's points of error and affirm the trial
court's judgment.



 Jack Carter

 Justice



Date Submitted: September 25, 2007

Date Decided: October 18, 2007


Do Not Publish

1. Since the time of Ferguson's arrest, Herrera has been promoted to detective within the police
department. 
2. Herrera testified that VGN is used primarily to determine whether the suspect's intoxication
is attributable to having a higher dose of alcohol or drugs. Herrera testified Ferguson did not exhibit
nystagmus (a jerking of the eyes) during this test.