

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-421-CR

HIEP D. NGO                                                      APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

-----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

### I. INTRODUCTION

Appellant Hiep D. Ngo appeals his conviction for murder. In two points, Ngo argues that the evidence is legally and factually insufficient to sustain his conviction because the witnesses who testified at trial were not credible. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. BACKGROUND

On August 10, 2002, Vu Doan was shot in the head and killed in front of a pool hall located in a strip shopping mall. Prior to the shooting, the pool hall, which had been "completely packed," began to clear out as the majority of the customers left. Michael Sengvilay, who was sixteen years old on the night of the shooting, had gone to the pool hall with a couple of friends, including Doan, to "waste some time" before attending a concert at a nearby club. Sengvilay entered the pool hall and saw Ngo, whom he knew although they were not friends. He noticed that Ngo had a black eye. Sengvilay then exited the club and began talking and "horse playing" in front of the pool hall with Doan and their other companions. While in the parking lot, he heard Ngo and another man start to argue and then saw Ngo fire a pistol in the air several times while screaming. Bystanders outside of the pool hall began to scatter as Ngo lowered the pistol and started to fire into the crowd. Sengvilay and Doan ran towards the parking lot, but Doan apparently turned back toward the pool hall. Sengvilay crouched behind a car looking for his friend. He watched Ngo drive off with another man. As he surveyed the parking lot, he saw Doan on the ground with a gunshot wound in the head.

At trial, Lana Vo, the manager of the pool hall, testified that Ngo was a customer and that on the night of the shooting Ngo was at the pool hall and

2

had a black eye. She testified that the shooting had occurred outside of the pool hall and that she was given two descriptions of the shooter by people fleeing into the pool hall. One person stated that the shooter had a black eye, and the other reported that the shooter was a "short and bulky guy." When she heard these descriptions, Vo "thought of" Ngo because he matched the description of the shooter.

Julie Ly, who was nineteen years old at the time of the shooting, testified that she personally knew Ngo. She explained that she was sitting in her car in the parking lot in front of the pool hall waiting for a friend and saw a crowd emerge from the pool hall and mill around in front of the entrance. She saw Ngo approach a nearby car but then lost sight of him. Ly heard a shout and then saw Ngo fire a pistol first into the air, then into the crowd in front of him. Ly saw Doan get shot.

Han Doa testified that she has known Ngo for three years. She stated that she went to the pool hall on the evening of the shooting to meet her boyfriend Tinh Nguyen. Inside the pool hall, she saw Nguyen with Ngo. Doa left the pool hall to speak with a friend in the parking lot. She was standing next to Nguyen's car when Nguyen and Ngo walked up and opened the trunk of the car. She saw Ngo take an object out of the trunk and walk toward the crowd that had gathered outside of the pool hall. Minutes later, Doa heard

3

shots fired, although she could not see the shooter. Ngo and Nguyen then rushed towards Nguyen's car, and Nguyen ordered Doa to get into the vehicle and drive. Four people were present in the car as Doa pulled away: Doa in the driver's seat; Nguyen next to her; and Ngo and a woman Doa did not know in the back seat. Nguyen forced Doa to drive to Houston. Doa testified that during the drive, Ngo and Nguyen discussed what had occurred and Ngo admitted to firing the shots in front of the pool hall.

After the shooting, police talked to Sengvilay, Vo, and Ly. Sengvilay and Ly told the police that Ngo was the shooter, and Vo told them that she suspected that Ngo was the shooter.

By early 2007, Ngo had relocated to Louisiana and had become a "very good associate[]" of Wesley Lee, a federal felon. Lee testified that Ngo had told him that he had been "at a club, some type of game room" when he "got into it with some fools." Ngo told Lee that he went to his car and "waited for the fools to come out." When they exited, "he shot one of them in the head, killed one of them. And he got in the car, pull[ed] off," and fled to Houston. Lee contacted the Tarrant County Sheriff's Department after Ngo confessed to him. Lee testified at Ngo's trial that the prosecutor had agreed to write a letter on Lee's behalf seeking a reduction in Lee's prison sentence if he testified against Ngo.

4

A unanimous jury convicted Ngo for Doan's murder, and the trial court subsequently sentenced him to life imprisonment.

### III. STANDARDS OF REVIEW

**A. Legal Sufficiency**

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we

5

"determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

**B. Factual Sufficiency**

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

6

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704. An opinion addressing factual sufficiency must include a discussion of the most

7

important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

## IV. SUFFICIENCY OF THE EVIDENCE

In two points, Ngo argues that the evidence is legally and factually insufficient to convict him of murder. Specifically, he contends that no credible testimony existed to establish the elements of murder because every witness was "either lying, granted immunity for perjury, or wasn't sure of what [he or she] knew."

### A. Law on Murder

A person commits murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1)–(2) (Vernon 2003).

### B. Legally Sufficient Evidence

Viewing the evidence in the light most favorable to the verdict, the record demonstrates that two eyewitnesses—both of whom personally knew Ngo—testified that they saw Ngo fire a pistol into the crowd outside of the pool hall. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2793; *Clayton*, 235 S.W.3d at 778. A third witness—who also personally knew Ngo—testified that moments before the shooting, she saw Ngo and Nguyen get something out of

8

the trunk of Nguyen's car, that she heard shots and saw the crowd running, and that Ngo and Nguyen then forced her into the car and ordered her to drive them to Houston. The same witness testified that during the trip to Houston, Ngo confessed to firing the shots outside of the pool hall. A fourth witness testified that she also knew Ngo personally and saw him at the pool hall on the night of the shooting. She explained that she received two descriptions of the shooter—that he was short and bulky and that he had a black eye—and that Ngo matched both of the descriptions.[2] A fifth witness testified that Ngo had told him that he had shot and killed someone at a game room in Tarrant County.

Viewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found that the testimony of the witnesses at trial was sufficient to establish the elements of murder beyond a reasonable doubt. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778; *see also* Tex. Penal Code Ann. § 19.02(b)(1)–(2)

---

[2] Ngo argues that the evidence regarding whether he had a black eye on the night of the shooting is inconsistent. This argument is not appropriate for our legal sufficiency review, in which we must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. Consequently, we will address Ngo's argument, which he also raises in his factual sufficiency point, in our factual sufficiency review below.

(providing elements of murder). Accordingly, we hold that the evidence is legally sufficient to support Ngo's conviction. We overrule Ngo's second point.

## C. Factually Sufficient Evidence

Ngo argues that factually insufficient evidence exists to support his conviction because the evidence regarding whether he had a black eye on the night of the shooting is inconsistent. He points to the following alleged inconsistencies to support his argument: (1) Vo, the manager of the pool hall, testified that she received two different descriptions of the shooter—one as a guy with a black eye and one as a short and bulky man; (2) Sengvilay testified that Ngo had a black eye on the night of the shooting, but he did not tell the police that fact; (3) Ly testified that she did not see if Ngo had a black eye because she was not close enough to him; and (4) Dao, who traveled to Houston with Ngo immediately after the shooting, testified that she did not remember if Ngo had a black eye. Ngo argues that this testimony created conflicting evidence and that "the most important fact, the black eye, was not mentioned to police until much later in time."

But this testimony is not contradictory.[3] It is understandable, as the State points out, that eyewitnesses who knew Ngo by name would describe him by name, rather than as a guy with a black eye, when they talked to police. Furthermore, even if the witnesses' testimony was inconsistent, the jury was free to believe their trial testimony over the statements they made to the police. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Baker v. State*, No. 14-08-00047-CR, 2009 WL 838257, at *3 (Tex. App.—Houston [14th Dist.] Mar. 31, 2009, no pet.) (mem. op., not designated for publication); *see also Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999) (noting that inconsistency goes to the credibility of the witnesses and the jury is the sole judge of that issue).

Ngo also contends that Lee's testimony was not credible because "it [was] entirely based on [his] desire to obtain his freedom." He asserts that the State granted Lee "immunity for perjury" in exchange for his testimony, but this

---

[3] Following the shooting, an officer presented Sengvilay and two or three other people with a photo spread, which included a photo of Ngo and five others. Sengvilay identified Ngo as the shooter but two of the other people—whose identities are not revealed in the record—could not identify the shooter. On appeal, Ngo argues that this inconsistency renders the evidence factually insufficient to support his conviction. However, at trial, the officer testified that these two people could not identify anyone in the photo spread because they did not see the shooter at the time of the offense.

allegation is not supported by the record. Moreover, it was within the purview of the jury to determine the credibility of Lee's testimony. *See Fuentes*, 991 S.W.2d at 271. The jury was presented with ample evidence concerning the circumstances of Lee's testimony and was thus positioned to resolve questions about his credibility and the weight to be given to his testimony. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 865 (1985).

Nothing in the record suggests that anyone other than Ngo killed Doan. *See Roy v. State*, 76 S.W.3d 87, 103 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (rejecting factual sufficiency complaint when eyewitness testified that he saw defendant commit crime and defendant "did not testify or present any contrary evidence"). Contrary to Ngo's assertions on appeal, nothing suggests that the witnesses were "lying" or "weren't sure of what they knew." Doa and Sengvilay, both of whom personally knew Ngo, witnessed Ngo fire a pistol into the air and into the crowd in front of him. Three witnesses testified that Doan was shot through the head as a result of the shooting, and the medical examiner testified that Doan died of a gunshot wound to the head. Two witnesses testified that Ngo confessed to the shootings. Thus, despite Ngo's arguments that there were "inconsistencies" in the testimony and that Lee's testimony was not credible, sufficient evidence was otherwise presented that

12

supported Ngo's conviction for murder. *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (holding that the jury is to resolve conflicts in evidence and such conflicts will not call for reversal if there is enough credible testimony to support the conviction).

We have reviewed the evidence in a neutral light, and we find no objective basis in the record for holding that the jury's verdict was clearly wrong or manifestly unjust or that it was contradicted by the great weight and preponderance of the evidence. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Rather, the evidence presented at trial was sufficient to support the verdict, and no contrary evidence exists that would render the evidence factually insufficient under the applicable standard of review. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417; *Baker*, 2009 WL 838257, at *3. Accordingly, we hold that the evidence is factually sufficient to support Ngo's conviction. We overrule Ngo's first point.

## V. CONCLUSION

Having overruled both of Ngo's points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 9, 2009

13