COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-421-CR

 

 

HIEP D. NGO                                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 371ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                           I.
INTRODUCTION

Appellant Hiep D. Ngo appeals his conviction for
murder.  In two points, Ngo argues that
the evidence is legally and factually insufficient to sustain his conviction
because the witnesses who testified at trial were not credible.  We will affirm.








                                          II.
BACKGROUND

On August 10, 2002, Vu Doan was shot in the head
and killed in front of a pool hall located in a strip shopping mall.  Prior to the shooting, the pool hall, which
had been Acompletely packed,@ began
to clear out as the majority of the customers left.  Michael Sengvilay, who was sixteen years old
on the night of the shooting, had gone to the pool hall with a couple of
friends, including Doan, to Awaste
some time@ before attending a concert at a
nearby club.  Sengvilay entered the pool
hall and saw Ngo, whom he knew although they were not friends.  He noticed that Ngo had a black eye.  Sengvilay then exited the club and began
talking and Ahorse playing@ in
front of the pool hall with Doan and their other companions.  While in the parking lot, he heard Ngo and
another man start to argue and then saw Ngo fire a pistol in the air several
times while screaming.  Bystanders
outside of the pool hall began to scatter as Ngo lowered the pistol and started
to fire into the crowd.  Sengvilay and
Doan ran towards the parking lot, but Doan apparently turned back toward the
pool hall.  Sengvilay crouched behind a
car looking for his friend.  He watched
Ngo drive off with another man.  As he
surveyed the parking lot, he saw Doan on the ground with a gunshot wound in the
head.








At trial, Lana Vo, the manager of the pool hall,
testified that Ngo was a customer and that on the night of the shooting Ngo was
at the pool hall and had a black eye. 
She testified that the shooting had occurred outside of the pool hall
and that she was given two descriptions of the shooter by people fleeing into
the pool hall.  One person stated that
the shooter had a black eye, and the other reported that the shooter was a Ashort
and bulky guy.@ 
When she heard these descriptions, Vo Athought
of@ Ngo
because he matched the description of the shooter.

Julie Ly, who was nineteen years old at the time
of the shooting, testified that she personally knew Ngo.  She explained that she was sitting in her car
in the parking lot in front of the pool hall waiting for a friend and saw a
crowd emerge from the pool hall and mill around in front of the entrance.  She saw Ngo approach a nearby car but then
lost sight of him.  Ly heard a shout and
then saw Ngo fire a pistol first into the air, then into the crowd in front of
him.  Ly saw Doan get shot.








Han Doa testified that she has known Ngo for
three years.  She stated that she went to
the pool hall on the evening of the shooting to meet her boyfriend Tinh
Nguyen.  Inside the pool hall, she saw
Nguyen with Ngo.  Doa left the pool hall
to speak with a friend in the parking lot. 
She was standing next to Nguyen=s car
when Nguyen and Ngo walked up and opened the trunk of the car.  She saw Ngo take an object out of the trunk
and walk toward the crowd that had gathered outside of the pool hall.  Minutes later, Doa heard shots fired,
although she could not see the shooter. 
Ngo and Nguyen then rushed towards Nguyen=s car,
and Nguyen ordered Doa to get into the vehicle and drive.  Four people were present in the car as Doa
pulled away:  Doa in the driver=s seat;
Nguyen next to her; and Ngo and a woman Doa did not know in the back seat.  Nguyen forced Doa to drive to Houston.  Doa testified that during the drive, Ngo and
Nguyen discussed what had occurred and Ngo admitted to firing the shots in
front of the pool hall.

After the shooting, police talked to Sengvilay,
Vo, and Ly.  Sengvilay and Ly told the
police that Ngo was the shooter, and Vo told them that she suspected that Ngo
was the shooter.

By early 2007, Ngo had relocated to Louisiana and
had become a Avery good associate[]@ of
Wesley Lee, a federal felon.  Lee
testified that Ngo had told him that he had been Aat a
club, some type of game room@ when he
Agot into
it with some fools.@ 
Ngo told Lee that he went to his car and Awaited
for the fools to come out.@  When they exited, Ahe shot
one of them in the head, killed one of them. 
And he got in the car, pull[ed] off,@ and
fled to Houston.  Lee contacted the
Tarrant County Sheriff=s Department after Ngo confessed
to him.  Lee testified at Ngo=s trial
that the prosecutor had agreed to write a letter on Lee=s behalf
seeking a reduction in Lee=s prison
sentence if he testified against Ngo.








A unanimous jury convicted Ngo for Doan=s
murder, and the trial court subsequently sentenced him to life imprisonment.

                                     III.
STANDARDS OF REVIEW

A. Legal Sufficiency

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

B.  Factual Sufficiency

When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v.
State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Lancon v. State, 253
S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.













In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

                                 IV.
SUFFICIENCY OF THE EVIDENCE

In two points, Ngo argues that the evidence is
legally and factually insufficient to convict him of murder.  Specifically, he contends that no credible
testimony existed to establish the elements of murder because every witness was
Aeither
lying, granted immunity for perjury, or wasn=t sure
of what [he or she] knew.@

                                        A.
Law on Murder

A person commits murder if he intentionally or
knowingly causes the death of an individual or intends to cause serious bodily
injury and commits an act clearly dangerous to human life that causes the death
of an individual.  Tex. Penal Code Ann. ' 19.02(b)(1)B(2)
(Vernon 2003).

                                 B.
Legally Sufficient Evidence








Viewing the evidence in the light most favorable
to the verdict, the record demonstrates that two eyewitnessesCboth of
whom personally knew NgoCtestified that they saw Ngo fire
a pistol into the crowd outside of the pool hall.  See Jackson, 443 U.S. at 319, 99 S.Ct. at
2793; Clayton, 235 S.W.3d at 778. 
A third witnessCwho also personally knew NgoCtestified
that moments before the shooting, she saw Ngo and Nguyen get something out of
the trunk of Nguyen=s car, that she heard shots and
saw the crowd running, and that Ngo and Nguyen then forced her into the car and
ordered her to drive them to Houston. 
The same witness testified that during the trip to Houston, Ngo
confessed to firing the shots outside of the pool hall.  A fourth witness testified that she also knew
Ngo personally and saw him at the pool hall on the night of the shooting.  She explained that she received two
descriptions of the shooterCthat he
was short and bulky and that he had a black eyeCand that
Ngo matched both of the descriptions.[2]  A fifth witness testified that Ngo had told
him that he had shot and killed someone at a game room in Tarrant County.








Viewing the evidence in the light most favorable
to the jury=s verdict, we  hold that a rational trier of fact could have
found that the testimony of the witnesses at trial was sufficient to establish
the elements of murder beyond a reasonable doubt.  See Jackson, 443 U.S. at 326, 99 S.
Ct. at 2793; Clayton, 235 S.W.3d at 778; see also Tex. Penal Code
Ann. ' 19.02(b)(1)B(2)
(providing elements of murder). 
Accordingly, we hold that the evidence is legally sufficient to support
Ngo=s
conviction.  We overrule Ngo=s second
point. 

                               C.
Factually Sufficient Evidence

Ngo argues that factually insufficient evidence
exists to support his conviction because the evidence regarding whether he had
a black eye on the night of the shooting is inconsistent.  He points to the following alleged
inconsistencies to support his argument: (1) Vo, the manager of the pool hall,
testified that she received two different descriptions of the shooterCone as a
guy with a black eye and one as a short and bulky man; (2) Sengvilay testified
that Ngo had a black eye on the night of the shooting, but he did not tell the
police that fact; (3) Ly testified that she did not see if Ngo had a black eye
because she was not close enough to him; and (4) Dao, who traveled to Houston
with Ngo immediately after the shooting, testified that she did not remember if
Ngo had a black eye.  Ngo argues that
this testimony created conflicting evidence and that Athe most
important fact, the black eye, was not mentioned to police until much later in
time.@








But this testimony is not contradictory.[3]  It is understandable, as the State points
out, that eyewitnesses who knew Ngo by name would describe him by name, rather
than as a guy with a black eye, when they talked to police.  Furthermore, even if the witnesses=
testimony was inconsistent, the jury was free to believe their trial testimony
over the statements they made to the police. 
See Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App.
1991); Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Baker
v. State, No. 14-08-00047-CR, 2009 WL 838257, at *3 (Tex. App.CHouston
[14th Dist.] Mar. 31, 2009, no pet.) (mem. op., not designated for
publication); see also Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim.
App.), cert. denied, 528 U.S. 1026 (1999) (noting that inconsistency
goes to the credibility of the witnesses and the jury is the sole judge of that
issue).








Ngo also contends that Lee=s
testimony was not credible because Ait [was]
entirely based on [his] desire to obtain his freedom.@  He asserts that the State granted Lee Aimmunity
for perjury@ in exchange for his testimony,
but this allegation is not supported by the record.   Moreover, it was within the purview of the
jury to determine the credibility of Lee=s
testimony.  See Fuentes, 991
S.W.2d at 271.  The jury was presented
with ample evidence concerning the circumstances of Lee=s
testimony and was thus positioned to resolve questions about his credibility
and the weight to be given to his testimony. 
See Bonham v. State, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984), cert.
denied, 474 U.S. 865 (1985).








Nothing in the record suggests that anyone other
than Ngo killed Doan.  See Roy v.
State, 76 S.W.3d 87, 103 (Tex. App.CHouston
[14th Dist.] 2002, no pet.) (rejecting factual sufficiency complaint when
eyewitness testified that he saw defendant commit crime and defendant Adid not
testify or present any contrary evidence@).  Contrary to Ngo=s
assertions on appeal, nothing suggests that the witnesses were Alying@ or Aweren=t sure
of what they knew.@ 
Doa and Sengvilay, both of whom personally knew Ngo, witnessed Ngo fire
a pistol into the air and into the crowd in front of him.  Three witnesses testified that Doan was shot through
the head as a result of the shooting, and the medical examiner testified that
Doan died of a gunshot wound to the head. 
Two witnesses testified that Ngo confessed to the shootings.  Thus, despite Ngo=s
arguments that there were Ainconsistencies@ in the
testimony and that Lee=s testimony was not credible,
sufficient evidence was otherwise presented that supported Ngo=s
conviction for murder.  See Bowden v.
State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (holding that the jury is
to resolve conflicts in evidence and such conflicts will not call for reversal
if there is enough credible testimony to support the conviction).

We have reviewed the evidence in a neutral light,
and we find no objective basis in the record for holding that the jury=s
verdict was clearly wrong or manifestly unjust or that it was contradicted by
the great weight and preponderance of the evidence.  See Lancon, 253 S.W.3d at 704; Watson,
204 S.W.3d at 414B15, 417.  Rather, the evidence presented at trial was
sufficient to support the verdict, and no contrary evidence exists that would
render the evidence factually insufficient under the applicable standard of
review.  See Lancon, 253 S.W.3d at
704; Watson, 204 S.W.3d at 414B15, 417;
Baker, 2009 WL 838257, at *3. 
Accordingly, we hold that the evidence is factually sufficient to
support Ngo=s conviction.  We overrule Ngo=s first
point.

                                           V.
CONCLUSION

Having overruled both of Ngo=s
points, we affirm the trial court=s
judgment.

SUE
WALKER

JUSTICE

 

PANEL: LIVINGSTON,
DAUPHINOT, and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: July 9, 2009











[1]See Tex. R. App. P. 47.4.





[2]Ngo argues that the
evidence regarding whether he had a black eye on the night of the shooting is
inconsistent.  This argument is not
appropriate for our legal sufficiency review, in which we must presume that the
factfinder resolved any conflicting inferences in favor of the prosecution and
defer to that resolution.  See Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.  Consequently, we will address Ngo=s argument, which he also
raises in his factual sufficiency point, in our factual sufficiency review
below.





[3]Following the shooting,
an officer presented Sengvilay and two or three other people with a photo
spread, which included a photo of Ngo and five others.  Sengvilay identified Ngo as the shooter but
two of the other peopleCwhose identities are not
revealed in the recordCcould not identify the
shooter.  On appeal, Ngo argues that this
inconsistency renders the evidence factually insufficient to support his
conviction.  However, at trial, the
officer testified that these two people could not identify anyone in the photo
spread because they did not see the shooter at the time of the offense.