**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00047-CR**
_____

**PATRICK HEBNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 12-13396**

**MEMORANDUM OPINION**

This is an appeal from a conviction for aggravated assault, a second degree felony. Tex. Penal Code Ann. § 22.02(a)(2) (West 2011). After Patrick Hebner[1] pleaded not guilty to the indictment charging him with aggravated assault, a jury found him guilty, sentenced him to a four-year sentence, and then recommended that the court place Hebner on probation. Hebner contends the evidence is

_____

[1] The judgment indicates that Patrick Hebner is also known as Patrick James Hebner.

1

insufficient to support the jury's verdict, arguing the evidence in the record that supports the jury's conclusion that he displayed a knife in the course of committing the assault was unreliable. We disagree, as the evidence before the jury allowed the jury to reasonably conclude that Hebner displayed a knife in the course of committing the assault. Therefore, we affirm the trial court's judgment.

Background

Hebner's conviction arises from an incident that occurred on January 11, 2012, following Wednesday night services at a church, which is located in Port Arthur, Texas. The indictment charging Hebner with the assault alleges that Hebner assaulted B.J.[2] by threatening him with a knife. When the incident occurred, B.J. was sixteen years old. On the evening of the alleged assault, B.J. was leaving a meeting that had just concluded when he noticed a group of younger children coming down the hall. The children were coming towards B.J., and they needed to use the door of the building that B.J. had just used to leave the building. According to B.J., he decided to play a joke on the children who were coming down the hall, and while outside the building, he held a door shut to make the door

---

[2] Because our constitution grants crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process," we use initials to identify the individual who the State alleged was the victim of the assault. Tex. Const. art. I, § 30.

appear to be locked. After B.J. had been holding the door for few seconds, the testimony indicates that Hebner, who was inside the building, approached the door to investigate why the door would not open. The testimony indicates that Hebner cursed and then demanded that the door be opened. When B.J. opened the door, Hebner pushed B.J. up against the wall next to the exterior door to the building, and Hebner again cursed B.J. for playing a trick on the children who were attempting to use the door to leave the building. B.J. and two of his friends that were standing near the door testified during the trial to circumstances that tend to indicate that Hebner displayed an open knife to B.J. while Hebner had B.J. pinned to the wall. Hebner contends the testimony of these three witnesses was insufficient to prove that he displayed an open knife when the altercation occurred.

The jury's determination that Hebner displayed a knife during the altercation relies in large part on the eyewitness accounts regarding the altercation that occurred just outside the door the children used to exit the building. B.J. testified during the trial that he felt a sharp object pressed against his abdomen while Hebner had him pinned against the wall near the door. According to B.J., the object against his stomach caused him to "fear for [his] life" because he thought Hebner was going to "kill [him]." B.J. explained that immediately after Hebner released him, Hebner held up an open knife and said: "'Do you see this? I don't f*** around.'"

Hebner does not dispute the evidence showing that he had a knife with him on the evening the assault is alleged to have occurred. The knife was admitted into evidence, and other exhibits picturing the knife show that it is attached to a key ring and has a blade that is approximately 2 3/4" inches long. The key ring also contains several keys.

Micah Moore was standing near the door and testified he was present when B.J.'s altercation with Hebner occurred. According to Micah, he and Hunter Meziere had just left the building with B.J. when B.J. decided to play a trick on the children who needed to use the door they had just come through to leave the building. Micah testified that after B.J. began holding the door, he heard an adult demand that the door be opened. When B.J. opened the door, Hebner came through the door and pinned B.J. against the wall with his arm. Micah explained that while Heber had B.J. pinned, he was facing Hebner's back. Micah testified that he heard Hebner say that he did not play around, and he also heard Hebner direct B.J. to look down. Micah indicated that Hebner turned around after releasing B.J., and that at that point he saw Hebner "closing his knife."[3] Micah recalled that Hebner said "he would kill [B.J.] if he ever did it again."

---

[3] On cross-examination, Micah clarified that he first saw the knife in Hebner's hand as Hebner backed away from B.J. after pinning B.J. to the wall.

4

Hunter testified at the trial that he was standing outside the door to the building when the altercation between Hebner and B.J. occurred. Hunter explained that as he heard the children inside coming down the hall, he saw B.J. crouch below the window to the door used to exit the building, and that he saw B.J. holding the door. Hunter stated that as B.J. was holding the door, he heard an adult inside the building curse and demand that the door be opened. According to Hunter, when Hebner came out, he saw Hebner pin B.J. to the wall outside the door, and he heard Hebner say "Do you want to play?" Hunter explained that while B.J. was pinned against the wall, Hebner told B.J. to look down. According to Hunter, at that point he could not see whether Hebner had anything in his hand. However, Hunter testified that when Hebner turned around, he saw "the knife was in [Hebner's] possession." According to Hunter, he saw Hebner "folding the knife back to a closed position" as Hebner turned towards him.

The State called three additional witnesses to develop whether Hebner had displayed a knife during the altercation. Officer Timothy Dinger testified during the trial that he investigated the incident at the church the night that it occurred. According to Officer Dinger, during his investigation, he spoke to B.J. and Micah who had witnessed the incident. Officer Dinger explained that he never spoke to Hebner, because Hebner left the church before he arrived. According to Officer

5

Dinger, he learned in his investigation from the individuals that he spoke with that night at the church that Hebner had threatened B.J. with a knife.

Brian French, the church's youth minister at the time the altercation occurred, was also called by the State to testify in Hebner's trial. French explained that he did not witness the altercation between B.J. and Hebner. However, after the incident that night, B.J., Micah, and Hebner all approached him to explain what had just occurred. According to French, as the group was approaching him, he heard Hebner trying to apologize about the incident but he could not hear what Hebner said. French explained that he chose to separate Hebner from the others, and he took Hebner outside. French testified that Hebner told him on the night of the altercation that he had taken his knife out and held it to B.J.'s stomach, but claimed that when he did so, the knife was closed. According to French, after Hebner told him what had happened that night, he asked Hebner to leave. French indicated that although he was upset that the incident occurred, he did not call the police. French stated that he did speak to an officer who came to the church later that night about the altercation that occurred on the church's property.

The State's last witness was Detective Brian Fanette, a detective employed by the Port Arthur Police Department. Detective Fanette indicated that he was assigned to investigate the altercation between B.J. and Hebner, and that in his investigation, he talked to B.J., Micah, Hunter, and Brian. According to Detective

Fanette, their accounts about the incident were all about the same. Detective Fanette explained that he called Hebner and asked Hebner to provide him with his account of what happened, but Hebner declined. Detective Fanette explained that after completing his investigation, he arrested Hebner on a charge of aggravated assault. Detective Fanette testified that the knife on Hebner's key ring qualified as a deadly weapon, as knives of that size are capable of injuring or killing someone.

Two witnesses, Hebner and J.H.,[4] testified in Hebner's defense. In his testimony, J.H. indicated that Hebner took him to the church the evening the altercation occurred. According to J.H., when church ended, he ran down the hall to leave the building but when he got to the door, it would not open because someone outside the door was holding it closed. J.H. recalled that after Hebner opened the door, he heard Hebner tell the boys involved in the prank: "'Don't pick on the little kids.'" According to J.H., he went out the door and Hebner then told him to get in his truck. J.H. recalled that while he was going to Hebner's truck, Hebner continued talking to the boys that had been involved in the prank. J.H. testified that based on what he saw the night the altercation occurred, Hebner never touched B.J.

---

[4] As J.H. was a minor at the time he testified in Hebner's trial, and to protect his identity, we identify him by using initials.

Hebner testified in his own defense during the trial. In his testimony, Hebner explained that he spent thirteen years in the military before moving to Jefferson County. Hebner indicated that while in the military, he served as a military police officer. According to Hebner, he took his three sons and J.H. to church the evening that his altercation with B.J. occurred. Hebner explained that after church services ended, he was walking down a hallway when he stopped to speak with Brian about an upcoming trip that was being planned for the youth. Hebner testified that while talking with Brian, he noticed the kids who were attempting to leave the building could not open the door. At that point, Hebner walked to the end of the hall and tried to open the door. However, the door would not open. On his second attempt, the door moved some, causing Hebner to believe that the door was not locked. Hebner explained that he realized someone was behind the door, that he cursed, and that he demanded that the door be opened. Hebner acknowledged that the prank being played by the boys outside the church on the children inside the building upset him. When the door opened, Hebner went outside and saw two boys sitting on a railing laughing, and another boy standing near J.H. who looked "like he was about to slap [J.H.] or something." Hebner explained that he stepped between J.H. and B.J. According to Hebner, he had his key ring in his hand when he stepped between the two boys. Hebner denied that he ever touched B.J., and he denied that he ever put the keys or any other object against B.J.'s stomach. Hebner

8

indicated after scolding B.J., B.J. threatened to call the police. Hebner explained that he saw B.J. re-enter the building, and at that point, he also heard B.J.'s friends saying things like: "'Was that a knife in his hand?'" Hebner explained that it occurred to him at that point that the boys were going to claim that he was holding a knife when he confronted B.J. just outside the door to the building at the church. Hebner denied that he ever told Brian that he held the knife on his key ring against B.J.'s stomach.

## Sufficiency Challenge

The jury's verdict resolved the disputed testimony that surrounded Hebner's alleged use of the knife. By its verdict, the jury chose to credit the version of the events provided by B.J., Micah, and Hunter, and to discredit the accounts about the altercation provided by J.H. and Hebner. In reviewing sufficiency challenges, appeals courts are not allowed to substitute their judgment for the judgments the jury made in deciding which of the witnesses who testified in a trial were believable. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, as an appellate court, we are required to allow the jury to resolve what testimony it finds believable, to allow the jury to resolve any conflicts in the testimony provided to them by different witnesses, to allow the jury to weigh the testimony of the various witnesses who testify, and to allow the jury to draw reasonable inferences from the facts and circumstances in a trial. *Id*.

9

In a sufficiency review, we review the evidence admitted in a trial in the light that is most favorable to the verdict that the jury reached, and then, based on that evidence, we determine whether a rational factfinder could have found the defendant committed the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). In this case, the jury convicted Hebner of aggravated assault by threat, and the alleged threat was based on his alleged use of an open-bladed knife. The elements of the crime of aggravated assault require the State to prove that:

1) the Defendant,

2) intentionally or knowingly,

3) threatened another with imminent bodily injury,

4) while using or exhibiting a deadly weapon.

Tex. Penal Code Ann. § 22.02(a)(2) (defining aggravated assault by threat to include proving assault as defined in section 22.01); *see also* Tex. Penal Code Ann. § 22.01(a)(2) (West Supp. 2016).[5]

In his appeal, Hebner focuses on various discrepancies in the details of the accounts of the altercation when comparing the testimony introduced during the

---

[5] We cite to the current version of the Texas Penal Code because the amendments do not impact the issue in this appeal.

trial from B.J., Micah, and Hunter. Hebner contends that such great differences exist in their accounts that no reasonable jury would have found that he used an open-bladed knife in the alleged assault. However, we disagree that the discrepancies in the details of the accounts provided by these witnesses are material, as it was up to the jury to decide which witnesses to believe and to decide how to weigh the various accounts that the jury was provided regarding the altercation. *See Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When a jury returns a verdict finding a defendant guilty in the face of conflicting testimony, the appellate court presumes that the conflicts that exist in the testimony were all resolved in favor of the prosecution. *See Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In Hebner's trial, the testimony of B.J., Micah, and Hunter all support the jury's conclusion that Hebner displayed the open blade of the knife to B.J. during the course of his altercation with B.J. on the property owned by the church. Although differences may exist in the details about what happened in the altercation, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Here, three witnesses testified at trial to circumstances

11

indicating that Hebner displayed the open blade of his knife during the altercation that occurred on the church's property. While Hebner argues that the boys were less certain about whether he displayed an open knife to B.J. immediately following the altercation when compared to their certainty about that fact at trial, it was up to the jury to resolve any differences that existed in the accounts of the witnesses regarding the altercation. *Id*.

We hold the testimony is sufficient to support Hebner's conviction for aggravated assault.[6] Therefore, we overrule Hebner's sole issue, and we affirm the trial court's judgment. *See Jackson*, 443 U.S. at 319.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on December 9, 2015
Opinion Delivered September 28, 2016
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

---

[6] We note that the trial court's judgment, signed January 26, 2015, cites the wrong subsection of the Texas Penal Code for Hebner's conviction. To correct the trial court's clerical error, under the provision of the judgment indicating "Statute for Offense[,]" we substitute section "22.02(a)(2) PC" for the reference the judgment provides to section "22.02(a)(1) PC[.]"