

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00226-CR

JUSTIN GEROME HORN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 46,873-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

A surveillance video from the Walgreens store located on North Fourth Street in Longview, Gregg County, Texas, recorded a man in shorts purchasing some merchandise with a credit card at approximately 6:20 p.m. on July 19, 2016, while a contemporaneous Walgreens receipt documented a transaction in which a Visa credit card having the last four digits 6379 was swiped at 6:20:13 p.m., charging $220.18 for merchandise. Other evidence demonstrated that the card used in the transaction belonged to Dolorosa Welch and that, on that occasion, Welch had not authorized the use of that card by anyone, including the man in the video. One officer recognized Justin Gerome Horn from the video as the man involved in the transaction. When interviewed by law enforcement, Horn initially admitted, and later denied, that the person so depicted was him.

Horn appeals his resulting conviction for the offense of credit card abuse and a sentence of fourteen months' confinement. In a single point of error, Horn asserts that there was insufficient evidence to support the guilty verdict, claiming instead mistaken identity. Because sufficient evidence supported Horn's conviction for credit card abuse, we affirm the trial court's judgment.

In evaluating the evidence for legal sufficiency, we review all of the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1972); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the fact-finder "to fairly resolve conflicts in testimony, to weigh the evidence,

2

and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Under Section 32.31(b)(1)(A) of the Texas Penal Code, the elements of the offense of credit card abuse are (1) a person (2) with intent to fraudulently obtain (3) property or services (4) presents or uses (5) a credit card (6) with knowledge that the card was not issued to him or her and (7) with knowledge that he or she does not have the effective consent of the cardholder. TEX. PENAL CODE ANN. § 32.31(b)(1)(A) (West 2016); *see Ex parte Williams*, 622 S.W.2d 876, 877 (Tex. Crim. App. 1981). In this case, the State's indictment against Horn stated that

> on or about the 19th day of July, 2016 . . . JUSTIN GEROME HORN, hereinafter called Defendant, did then and there with the intent to fraudulently obtain a benefit, used a credit card, namely, Chase credit card ending in 6379, with knowledge that the card had not been issued to the said defendant, and with knowledge that said card was not used with the effective consent of the cardholder, namely, Dolorosa Welch.

Horn concedes that the State presented sufficient evidence to show that someone other than Welch used her credit card to make the purchases and that Welch did not give her consent for anyone to use her credit card. Horn contends, however, that there was insufficient proof that he was the individual who committed the offense.

In his interview of Horn, Gregg County Sheriff's Office Investigator Antonio Monsivais[1] showed Horn a photograph taken from the Walgreens surveillance video, asking, "[W]ho is this?"

---

[1]After being notified by her credit card company on July 25, 2016, that her card had been used on July 19, Welch contacted Monsivais. After speaking with Welch, Monsivais obtained the receipt. From the data on the receipt, Monsivais obtained the surveillance video recording matching the time on the receipt. From the surveillance video, Monsivais made still photographs of the individual. Monsivais posted either the surveillance videos or the photographs on the Gregg County website in hopes that someone would recognize the individual. After seeing

Horn responded, "That's me." When Horn was shown another photograph, he responded, "Yeah, that look[s] like me." When Horn was asked again if he was the individual in the photograph, Horn answered in the affirmative.

Horn continued to look through the photographs, and then he asked Monsivais if the person in one of the photographs was wearing green shorts. When Monsivais answered that the shorts appeared to be green to him, Horn quickly stated that he did not own a pair of green shorts. Monsivais also emphasized that the person in the photograph was wearing a "big ol' watch." Horn agreed that he owned a black and gold watch. After pointing out that the individual in one of the photographs was wearing sandals, Horn informed Monsivais that he did not own any sandals.[2] At that point, Horn stated that he was not, in fact, the person in the photographs. Horn then stated, "I might need a lawyer[,]" at which point Monsivais ended the interview.

Horn maintains that the State failed to prove that he was the person who appeared in the security video footage or the photographs. We disagree. The evidence shows that by matching the time on the Walgreen's credit card receipt to the timing on the store's recording device, the store manager was able to isolate video footage of the individual using Welch's credit card. The trial court was able to review that recording. In addition, Monsivais explained that the photographs that were admitted into evidence were produced directly from that video recording. Likewise, the

Monsivais' posting, a Longview police officer contacted him, explaining that he recognized the individual as being Horn. Monsivais also learned that Horn was being housed in the Gregg County Jail and went to the jail to speak with Horn.

[2]At trial, Horn's mother, Mary Davis, testified that Horn never wore sandals. Davis also stated that Horn did not drive and that, if he needed to go somewhere, either Davis, Horn's sister, or a friend would give him a ride.

trial court also had the opportunity during the non-jury trial to review photographs of the individual who had used Welch's credit card in Kroger. Horn was seated in the courtroom during the entire trial, thereby giving the trial court the opportunity to compare Horn's physical attributes to the person seen on the surveillance video and in the photographs. Most importantly, however, Horn was heard on the audio recording during the interview with Monsivais admitting that he was the person in the photographs. Despite his repeated admissions, Horn emphasizes that he eventually denied being the individual in the photographs when he noticed that the person was wearing green shorts and sandals, neither of which he owned. As the trier of fact, the trial court was the sole judge of the credibility of the witnesses and the weight given to the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). When faced with a record that supports conflicting inferences, we presume the trier of fact resolved the conflict in support of the verdict. *See id.*; *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

Considering all of these factors together, we find there is legally sufficient evidence to support the trial court's verdict. Therefore, we must defer to its determination, assume that any conflicting evidence or inferences were resolved in favor of the guilty verdict, and overrule Horn's sole point of error.

We affirm the trial court's judgment.


                                        Josh R. Morriss, III
                                        Chief Justice


Date Submitted:        July 30, 2018
Date Decided:          August 3, 2018

Do Not Publish